# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-10-00077-CR

---

**Allan Eugene Keate, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF SCHLEICHER COUNTY, 51ST JUDICIAL DISTRICT
NO. 992, THE HONORABLE BARBARA L. WALTHER, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant Allan Eugene Keate and nine other members of the Fundamentalist Church of Jesus Christ of Latter Day Saints (FLDS), living at the YFZ (Yearning for Zion) Ranch in Schleicher County, Texas, were indicted for sexual assault of a child.[1] *See* Tex. Penal Code Ann. § 22.011(a)(2)(A) (West 2011). Subsequently, a jury convicted appellant and assessed his punishment at confinement for thirty-three years in the Institutional Division of the Texas Department of Criminal Justice.[2] *See id.* §§ 12.32, 22.011(a)(2)(A), 22.011(f) (West 2011). This

---

[1] Some of the other individuals were also indicted for bigamy. Appellant, however, was charged only with sexual assault of a child.

[2] After finding him guilty, the jury found the enhancement paragraph to be true, subjecting appellant to an increased punishment range. *See* Tex. Penal Code Ann. §§ 12.32, 22.011(f) (West 2011). The enhancement paragraph alleged that the victim was a person with whom appellant was prohibited from marrying, purporting to marry, or living with under the appearance of being married. *See id.* §§ 22.011(f), 25.01(e) (West 2011).

appeal followed. Appellant brings forward thirty-two points of error. For the reasons below, we affirm the judgment of conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural background of this case are fully discussed in prior opinions of this Court, most recently in our opinion in *Jeffs v. State*, No. 03-10-00272-CR, 2012 WL 601846, at *1-4 (Tex. App.—Austin Feb. 24, 2012, no pet. h.). We do not repeat them here. We discuss further background details only as necessary to address the points of error raised by appellant in this appeal.

## DISCUSSION

## I. SUFFICIENCY OF THE EVIDENCE

In his first two points of error, appellant challenges the sufficiency of the evidence. First, he asserts that the evidence is insufficient to support his conviction for sexual assault of a child because the State failed to prove the element of penetration. Second, he contends that the evidence is insufficient because it fails to demonstrate that the sexual assault occurred in Texas.

### *Additional Background*

Appellant, a lifetime member of FLDS, moved to the YFZ Ranch in Schleicher County, Texas, in January 2004 with his family—including multiple "celestial wives" and numerous children—and lived with them in an assigned residence on the ranch. On May 5, 2005, appellant was sealed in a spiritual or celestial marriage to M. Barlow, an FLDS member born January 7, 1990, who had moved to the YFZ Ranch in July 2004. The ceremony took place at the "prophet's" house

2

on the ranch in Schleicher County when M. Barlow was fifteen years old and appellant was fifty-three. Subsequent to the celestial marriage, appellant and M. Barlow lived together, purportedly as husband and wife. On December 30, 2006, M. Barlow gave birth to a son when she was sixteen years old. DNA testing confirmed that appellant was the biological father of the child.[3]

### Standard of Review

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 313 (1979); *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011). When reviewing the sufficiency of the evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

In determining the legal sufficiency of the evidence, we must consider all the evidence in the record: both direct and circumstantial evidence, properly or improperly admitted

---

[3] DNA analysis reflected that appellant's DNA profile matched the child's DNA profile at all fifteen genetic markers analyzed. Statistical analysis of the DNA results indicated that appellant could not be excluded as the biological father of the child, while 99.99996 percent of the male population was excluded as the child's father. In addition, based upon the genetic evidence, it is 29,400,000 times more likely that appellant is the child's biological father than a randomly selected unrelated male of his race. Further, the likelihood that appellant is the child's biological father is 99.999996 percent as compared to an untested randomly chosen man of his race.

3

evidence, and evidence submitted by either the prosecution or the defense. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Moff v. State*, 131 S.W.3d 485, 489-90 (Tex. Crim. App. 2004); *Allen v. State*, 249 S.W.3d 680, 688-89 (Tex. App.—Austin 2008, no pet.). We review all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 318; *see Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). A legal sufficiency review requires us to defer to the jury's determinations of the witnesses' credibility and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899. When faced with a record of historical facts that supports conflicting inferences, we must also presume that the trier of fact resolved any such conflicts in favor of the prosecution and must defer to that resolution. *Jackson*, 443 U.S. at 326; *Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010). The jury, as exclusive judge of the facts, is entitled to weigh and resolve conflicts in the evidence and draw reasonable inferences therefrom. *Clayton*, 235 S.W.3d at 778; *see* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979) . In assessing the legal sufficiency of the evidence, we have a duty to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime that was charged. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007); *see Winfrey v. State*, 323 S.W.3d 875, 882 (Tex. Crim. App. 2010).

### *Evidence of Penetration*

Appellant was charged with the offense of sexual assault of a child. *See* Tex. Penal Code Ann. § 22.011 (a)(2)(A), (c)(1),(2). The State alleged in the indictment, and had the burden to prove, that appellant intentionally or knowingly caused the penetration of the female sexual organ

of M. Barlow, a child younger than seventeen years of age who was not the spouse of appellant, with appellant's sexual organ. In his first point of error, appellant argues that the evidence is insufficient to prove the element of penetration. He complains that the State's evidence is largely circumstantial and failed to eliminate the possibility that M. Barlow could have become pregnant by artificial insemination. He points to the lack of testimony from M. Barlow as support for this contention.

The lack of direct evidence is not dispositive of the issue of appellant's guilt. The State is not required to present direct evidence to establish guilt. *See Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004); *Sanders v. State*, 346 S.W.3d 26, 32 (Tex. App.—Fort Worth 2011, pet. ref'd). Indeed, circumstantial evidence is as probative as direct evidence in establishing guilt and may alone be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *Sanders*, 346 S.W.3d at 32. The law does not require that each fact "point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13; *see Guevara*, 152 S.W.3d at 49; *Sanders*, 346 S.W.3d at 32. The standard of review on appeal is the same for both direct and circumstantial evidence cases. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010); *Hooper*, 214 S.W.3d at 13; *Guevara*, 152 S.W.3d at 49.

Moreover, it is not incumbent upon the State to exclude "every reasonable hypothesis other than guilt" for the evidence to be considered sufficient.[4] *Geesa v. State*, 820 S.W.2d 154,

---

[4] In *Geesa v. State*, the Texas Court of Criminal Appeals expressly disavowed the "reasonable hypothesis analytical construct" for legal sufficiency reviews. *See Geesa v. State*, 820 S.W.2d 154, 159 (Tex. Crim. App. 1991), *overruled on other grounds by Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000).

157-61 (Tex. Crim. App. 1991), *overruled on other grounds by Paulson v. State*, 28 S.W.3d 570, 571 (Tex. Crim. App. 2000); *Sanders*, 346 S.W.3d at 32; *Villarreal Lopez v. State*, 267 S.W.3d 85, 97-98 (Tex. App.—Corpus Christi 2008, no pet.) (citing *Harris v. State*, 133 S.W.3d 760, 763-65 (Tex. App.—Texarkana 2004, pet. ref'd)); *see Orona v. State*, 836 S.W.2d 319, 322 (Tex. App.—Austin 1992, no pet.) ("*Geesa* rightfully abolished the logically inconsistent requirement in a circumstantial-evidence case that a legal-sufficiency review, in which the appellate court must view the evidence in the light most favorable to the prosecution, must also negate the existence of any alternate reasonable hypothesis inconsistent with the defendant's guilt.")

In a prosecution for sexual assault of a child, penetration may be proven by circumstantial evidence. *See Villalon v. State*, 791 S.W.2d 130, 133 (Tex. Crim. App. 1990); *Nilsson v. State*, 477 S.W.2d 592, 595 (Tex. Crim. App. 1972); *Belt v. State*, 227 S.W.3d 339, 342 (Tex. App.—Texarkana 2007, no pet.); *Quinton v. State*, 56 S.W.3d 633, 641 (Tex. App.—Waco 2001, pet ref'd). There is no requirement that the child victim testify about penetration. *Villalon*, 791 S.W.2d at 133; *Nilsson*, 477 S.W.2d at 596. Evidence of the slightest penetration is sufficient. *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992); *see Nilsson*, 477 S.W.2d at 595.

At trial, the jury received evidence that both appellant and M. Barlow moved to the YFZ Ranch in Schleicher County, Texas, in 2004. The evidence showed that appellant was sealed to M. Barlow in a celestial or spiritual marriage for "time and eternity" in May 2005 in a ceremony that was performed on the YFZ Ranch when M. Barlow was fifteen years old.[5] Evidence further

---

[5] Testimony showed that celestial or spiritual marriages in FLDS were religious unions not recognized as legal marriages by the state. A certified copy of a Utah marriage license reflected that appellant was already legally married to Nancy Carol Bauer at the time he entered into this spiritual

showed that after the marriage ceremony, appellant and M. Barlow lived together as husband and wife, including engaging in a sexually intimate relationship.[6] Finally, the evidence showed that M. Barlow gave birth to a son in December 2006 when she was sixteen years old. DNA testing established that appellant was the biological father of her child.[7]

A fact finder may support its verdict with reasonable inferences drawn from the evidence. *Laster*, 275 S.W.3d at 523; *Hooper*, 214 S.W.3d at 14. Jurors are free to use their common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence. *Obigbo v. State*, 6 S.W.3d 299, 306 (Tex. App.—Dallas 1999, no pet.); *Jones v. State*, 900 S.W.2d 392, 399 (Tex. App.—San Antonio 1995, pet. ref'd); *Wawrykow v. State*, 866 S.W.2d 87, 88 (Tex. App.—Beaumont 1993, pet. ref'd); *see Saenz v. State*, 976 S.W.2d 314, 322 (Tex. App.—Corpus Christi 1998, no pet.) ("Jurors are expected to draw upon their own experiences and common knowledge and apply them to the facts at hand.").

In this case, the circumstantial evidence of penetration is compelling. Using common sense and common knowledge, the jurors could rationally conclude that appellant and M. Barlow,

---

marriage with M. Barlow.

[6] Evidence demonstrated that M. Barlow received training on the need to be "close" to appellant and how to be close to him and that she expressed her desire to get close to the appellant. Testimony revealed that a wife "getting close" or "being close" to her husband in the context of a celestial or spiritual marriage could relate generally to submission and obedience to her husband or specifically to being sexually intimate and having sexual intercourse with him.

[7] Appellant offered no contravening evidence regarding paternity of the child. Nor did he offer evidence that M. Barlow became pregnant by some act other than sexual intercourse with him. He did not present his theory of artificial insemination to the jury in any way whatsoever.

as spiritual husband and wife, were involved in a sexually intimate relationship, one including sexual intercourse, that resulted in the conception of their son. Accordingly, viewing the evidence in the light most favorable to the verdict and with proper regard for the jury's power to resolve conflicts, evaluate credibility, and weigh the evidence, a rational trier of fact could have found beyond a reasonable doubt that appellant intentionally or knowingly caused the penetration of M. Barlow's sexual organ with his sexual organ when she was younger than seventeen. *See Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778; *see also* Tex. Penal Code Ann. § 22.011. Therefore, we hold that the evidence of penetration is legally sufficient. We overrule appellant's first point of error.

### *Territorial Jurisdiction*

In his second point of error, appellant contends that the evidence is insufficient to prove territorial jurisdiction. He argues that the evidence is insufficient to demonstrate that appellant's sexual assault of M. Barlow occurred in Texas because the direct evidence fails to show that the sexual act resulting in the conception of his child took place in Texas.

Texas has jurisdiction over an offense if the conduct comprising the offense occurs inside this state. *See* Tex. Penal Code Ann. § 1.04(a)(1) (West 2005). Jurisdiction can be established by circumstantial evidence. *Vaughn v. State*, 607 S.W. 2d 914, 920 (Tex. Crim. App. 1980); *Gunter v. State*, 327 S.W.3d 797, 799-800 (Tex. App.—Fort Worth 2010, no pet.); *see, e.g.*, *Walker v. State*, 195 S.W.3d 250, 257-58 (Tex. App.—San Antonio 2006, no pet.); *James v. State*, 89 S.W.3d 86, 89 (Tex. App.—Corpus Christi 2002, no pet.). It is unclear whether the State must prove territorial jurisdiction beyond a reasonable doubt or by a preponderance of the evidence. *See* *Torres v. State*, 141 S.W.3d 645, 654 (Tex. App.—El Paso 2004, pet. ref'd). Nevertheless, we

8

conclude that the evidence is legally sufficient to establish territorial jurisdiction in Texas regardless of which standard is applied.

The circumstantial evidence—viewed in the light most favorable to the verdict and with proper respect for the jury's power to resolve conflicts, evaluate credibility, and weigh the evidence—showed that appellant and M. Barlow lived together in a sexually intimate relationship as husband and wife on the YFZ Ranch in Schleicher County, Texas, prior to, during, and after the birth of their child. We hold that this evidence constitutes sufficient circumstantial evidence to support a finding by a jury beyond a reasonable doubt that appellant sexually assaulted M. Barlow in Texas.[8] *See Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778; *see also Geesa*, 820 S.W.2d at 155, 161. Therefore, the evidence is sufficient to prove that Texas has territorial jurisdiction. We overrule appellant's second point of error.

## II. CHURCH RECORDS

In points of error three through six, appellant argues that the trial judge erred in admitting documentary evidence seized from the vaults of the temple and temple annex of the YFZ Ranch. Appellant asserts the trial court abused its discretion by admitting this documentary evidence because the evidence was not properly authenticated under Rule 901 of the Texas Rules of Evidence and, further, because such evidence constituted inadmissible hearsay. In addition, he complains that the evidence was irrelevant and inadmissible under Rules 401 and 402 of the Texas Rules of

---

[8] Because we find the evidence legally sufficient under the more stringent beyond-a-reasonable-doubt standard, it would also be sufficient under the preponderance-of-the-evidence standard.

9

Evidence, inadmissible character conformity evidence under Rule 404(b), and substantially more prejudicial than probative under Rule 403. Appellant further argues that the admission of this documentary evidence violated his right to confront and cross-examine witnesses under both the United States and Texas Constitutions. Finally, appellant asserts that the admission of this evidence violated his right to due process under the United States Constitution and his right to due course of law under the Texas Constitution.

### Preservation of Error

Initially, we note that there are multiple preservation issues in connection with appellant's evidentiary complaints. Preservation of error is a systemic requirement on appeal. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009); *Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Wilson v. State*, 311 S.W.3d 452, 473-74 (Tex. Crim. App. 2010) (citing *Ford*, 305 S.W.3d at 532).

First, appellant proffers no argument or authority with respect to his complaints that the evidence was irrelevant and inadmissible under 401 and 402, impermissible character conformity evidence under 404(b), or substantially more prejudicial than probative under 403. Nor does he present any argument or authority concerning his contention that the admission of this documentary evidence violated his right to due process under the United States Constitution and his right to due course of law under the Texas Constitution. Accordingly, we consider these complaints inadequately briefed and as presenting nothing for our review. *See* Tex. R. App. P. 38.1(i); *Hankins v. State*, 132 S.W.3d 380, 385 (Tex. Crim. App. 2004) (failure to adequately brief issue, either by failing to

10

specifically argue and analyze one's position or provide authorities and record citations, waives any error on appeal); *Aldrich v. State*, 928 S.W.2d 558, 559 n.1 (Tex. Crim. App. 1996); *see also Leza v State*, 351 S.W.3d 344, 358 (Tex. Crim. App. 2011).

Second, in his argument concerning the violation of his right to confront and cross-examine witnesses, appellant provides authority only regarding the United States Constitution. Because appellant does not provide separate authority or argument for his state constitutional claim, we do not address it. *See Berry v. State*, 233 S.W.3d 847, 855 n.3 (Tex. Crim. App. 2007); *Heitman v. State*, 815 S.W.2d 681, 690-91 n.23 (Tex. Crim. App. 1991). In addition, because appellant does not argue that the Texas Constitution provides more protection than the United States Constitution, we properly resolve this claim under only the United States Constitution. *See Flores v. State*, 319 S.W.3d 697, 702 n.8 (Tex. Crim. App. 2010); *Muniz v. State*, 851 S.W.2d 238, 251 (Tex. Crim. App. 1993).

Third, a review of the record reflects that identical objections were not made to each and every exhibit. Thus, as to some exhibits, some complaints have not been properly preserved for appeal. *See* Tex. R. App. Proc. 33.1(a) (to preserve complaint for appellate review, party must have presented specific and timely request, motion, or objection to trial court and, further, must have obtained adverse ruling); *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011); *Peavey v. State*, 248 S.W.3d 455, 470 (Tex. App.—Austin 2008, pet. ref'd). In addition, during the course of trial, appellant began submitting written objections in response to the State's offer of exhibits rather than verbally stating the objections on the record. These written objections, however, are not contained in the record on appeal. Thus, we have no way of knowing what objections were raised

11

to the admission of these exhibits to the trial court or if the complaints appellant now raises on appeal comport with those raised at trial. *See* Tex. R. App. P. 33.1(a); *see also Lovill v. State*, 319 S.W.3d 687, 691-92 (Tex. Crim. App. 2009) (in order to preserve issue for appellate review, complaint on appeal must comport with complaint made at trial); *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004) (citing *Euziere v. State*, 648 S.W.2d 700, 703-04 (Tex. Crim. App. 1983)) (same). Accordingly, concerning the exhibits to which written objections were submitted, appellant failed to properly preserve and present his complaints for appellate review and has waived any error as to those exhibits.

Finally, appellant simply complains globally about the admission of a "large amount of documents," referring to the documents with group labels, but fails to identify any specific exhibit in the record.[9] In his reply brief, appellant acknowledges his failure to identify exhibits, but then merely lists in a footnote, without any citations to the record, sixty-five exhibits included in the "church and family records" of which he complains. An appellant is obligated to point out to the appellate court where the record shows that he has preserved error on his claim.[10] *Davis v. State*, 313 S.W.3d 317, 352 (Tex. Crim. App. 2010); *see Russeau v. State*, 291 S.W.3d 426, 437 (Tex.

---

[9] The record reflects that 178 exhibits were admitted at the State's request during both phases of trial. Of those exhibits, ninety-three are documentary exhibits and seventy-one appear to be documents recovered from the YFZ Ranch. The remaining documents include certified public records, the curriculum vitae of expert witnesses, the lab report of the DNA analysis, a stipulation of evidence, and letters written by appellant. Presumably, the letters of appellant were recovered from the ranch, but the record does not reflect where the letters were recovered.

[10] In fact, the court of criminal appeals has overruled an appellant's point of error solely because the appellant failed to cite the pages in the record where he made the complained-of argument to the trial court and received a ruling on it. *See Russeau v. State*, 291 S.W.3d 426, 437 (Tex. Crim. App. 2009). The court noted that "[i]t is not our obligation to pore through the voluminous record to verify that appellant preserved his . . . complaint for appellate review." *Id.*

Crim. App. 2009) (citing Tex. R. App. P. 33.1(a) & 38.1(h)).  Here, appellant's failure to identify

particular exhibits or cite to the record limits our ability to review the trial court's decision to admit

particular exhibits, as we do not have the exhibit to examine in connection with the trial objections

made and the complaints now raised on appeal.  Nevertheless, in the interest of justice, we will

address, generally, to the extent possible, appellant's evidentiary complaints.[11]

### *Standard of Review*

A trial judge has great discretion in the admission of evidence at trial.  *Druery*

*v. State*, 225 S.W.3d 491, 502 (Tex. Crim. App. 2007); *Montgomery v. State*, 810 S.W.2d 372,

378-79 (Tex. Crim. App. 1990) (opinion on reh'g).  We review the trial court's decision to admit or

exclude evidence under an abuse-of-discretion standard.  *Davis v. State*, 329 S.W.3d 798, 803 (Tex.

Crim. App. 2010); *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010).  Under an

abuse-of-discretion standard, we do not disturb the trial court's decision if the ruling was within the

zone of reasonable disagreement.  *Davis*, 329 S.W.3d at 803; *Bigon v. State*, 252 S.W.3d 360, 367

(Tex. Crim. App. 2008); *see Montgomery*, 810 S.W.2d at 378-79.

### *Authentication*

Within his fourth point of error, appellant complains that the trial judge abused her

discretion by admitting the documents recovered from the vaults of the temple and temple annex

because they were not adequately authenticated under Rule 901 of the Texas Rules of Evidence.

---

[11] Our review excludes appellant's complaints under Rules 401, 402, 403, and 404(b) of the Texas Rules of Evidence, his confrontation complaint under the Texas Constitution, and his constitutional claims of due process and due course of law violations because these complaints are clearly not preserved for appellate review given appellant's complete failure to proffer any argument or authority in connection with these claims.

The requirement of authentication or identification is a condition precedent to the admissibility of evidence and is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Tex. R. Evid. 901(a). The sufficiency of the predicate for admitting evidence is within the sound discretion of the trial court. *Davis v. State*, 992 S.W.2d 8, 11 (Tex. Crim. App. 1996). A trial court's decision as to whether evidence is properly authenticated is reviewed under the same abuse-of-discretion standard as the admissibility of evidence. *See Druery*, 225 S.W.3d at 502; *Angleton v. State*, 971 S.W.2d 65, 67 (Tex. Crim. App. 1998).

Authentication can be accomplished in various ways, including by direct testimony from a witness or circumstantial evidence. Rule 901(b) provides a nonexclusive list of methods for authenticating evidence that includes: (1) testimony of a witness with knowledge that a matter is what it is claimed to be, and (2) distinctive characteristics of the evidence, including "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." Tex. R. Evid. 901(b)(1), (4).

Rule 901 "does not erect a particularly high hurdle, and that hurdle may be cleared by circumstantial evidence." Peter T. Hoffman, *Texas Rules of Evidence Handbook*, Article IX at 948 (8th ed. 2008-09) (quoting *United States v. Chin*, 371 F.3d 31, 37 (2d Cir. 2004)). The proponent of the evidence does not need "to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *Id.* The proponent must only produce sufficient evidence that a reasonable fact finder could properly find genuineness. *Manuel v. State*, 357 S.W.3d 66, 74 (Tex. App.—Tyler 2011, pet. ref'd)

14

Under the authentication rule, the trial court's role is limited to determining whether the proponent of evidence requiring authentication has presented a prima facie case, i.e., evidence sufficient to support a jury finding that the item in question is what its proponent claims. *Druery*, 225 S.W.3d at 502; 1 Steven Goode, et al., *Texas Practice Series: Guide to the Texas Rules of Evidence* § 901.1 (3d ed. 2002); Tex. R. Evid. 104(b). A trial court does not abuse its discretion by admitting evidence when it reasonably believes that a reasonable juror could find that the evidence has been authenticated or identified. *Druery*, 225 S.W.3d at 502; *see Montgomery*, 810 S.W.2d at 391. We will not reverse the trial court's decision to admit or exclude evidence unless its ruling lies "outside the zone of reasonable disagreement." *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007).

At trial, Rebecca Musser, a former FLDS member and one of the sister-wives of the former "prophet," testified, based upon her personal experience and training as an FLDS member for twenty-six years, about the process and purpose of maintaining accurate church records relating to FLDS members. In addition, several law enforcement officers testified about recovering the documents from the locked vaults of the temple and temple annex. Based on the appearance, content, and substance of the various documents, taken in conjunction with where the records were located—reflecting how they were maintained and stored—and the testimony of the purpose and importance of making and keeping these records, the trial court could have reasonably concluded that the State satisfied its burden of presenting a prima facie case. In other words, on this record the trial court could have reasonably concluded that the testimony concerning the various documents, together with the documents themselves, was sufficient for a reasonable jury to conclude that the

15

documents were in fact church and family records relating to the family and personal history of the FLDS members. Thus, we discern no abuse of discretion on the part of the trial court in admitting the complained-of documents. We overrule appellant's fourth point of error as it relates to authentication.

### *Hearsay*

Appellant also asserts in his fourth point of error that the complained-of documents are hearsay and do not fall within one of the hearsay exceptions. Whether hearsay is admissible at a criminal trial is determined by the Texas Rules of Evidence and the Sixth Amendment to the federal Constitution. *Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011).

Hearsay is an out-of-court statement "offered in evidence to prove the truth of the matter asserted." Tex. R. Evid. 801(d). Generally, hearsay statements are not admissible unless the statement falls within a recognized exception to the hearsay rule. *Pena*, 353 S.W.3d at 814; *see* Tex. R. Evid. 802. Two exceptions, applicable regardless of whether the declarant is available to testify, are records of religious organizations and family records. Texas Rule of Evidence 803(11) excludes from the hearsay rule "[s]tatements of births, marriages, divorces, deaths, legitimacy, ancestry, relationship by blood or marriage, or other similar facts of personal or family history, contained in a regularly kept record of a religious organization." Tex. R. Evid. 803(11). Similarly, Texas Rule of Evidence 803(13) excludes "[s]tatements of fact concerning personal or family history contained in family Bibles, genealogies, charts, engravings on rings, inscriptions on family portraits, engravings on urns, crypts, or tombstones, or the like." Tex. R. Evid. 803(13). The State offered the complained-of documents under these exceptions to the hearsay rule.

16

In his argument against admissibility, appellant characterizes FLDS as an extreme breakaway sect of the Mormon church and appears to argue that because the church and the views of its leader (the prophet) are not mainstream, these documents should not be included in the hearsay exception for religious organizations. However, Rule 803(11) does not depend on the popularity or acceptance of the religious organization. Hearsay evidence need only be consistent with the provisions of the exception to be admissible. Here, the documents about which appellant complains were various documents relating to marriages, births, family relationships, personal history, and family history of FLDS members.[12] Further, the evidence at trial demonstrated that these documents were regularly maintained by the FLDS as part of the religious organization of the church.[13]

Appellant also argues against admissibility under these hearsay exceptions because the purpose for which the State offered the evidence was not, according to appellant, a purpose described by the rules. The exceptions to the hearsay rules are not dependent on the reason why a party wants to offer the hearsay. The only relevant inquiry concerning the purpose of hearsay is whether the out-of-court statement is being offered for the truth of the matter asserted. Why the

---

[12] For example, documents titled "marriage record" were in fact documents recording the marriage of two individuals: listing the names of the husband, wife, witnesses present, and who performed the ceremony, as well as documenting when and where the ceremony took place. Similarly, documents titled "family group sheet" were documents recording the various members of the family: names, dates and places of birth, gender, and family relationship. Documents titled "personal record" were documents describing the personal history of the individual, including the person's name, parents' names, date and place of birth, gender, and the dates and places of significant religious events such as baptism, blessing, and confirmation.

[13] Appellant's expert acknowledged that FLDS uses a standardized system of record keeping for church records—including bishops' records documenting marriages, births, priesthood ordinations, advancement, and community organization as well as marriage records, personal records, and family group records—that were stored in the church archives, though he disagreed that the particular documents offered in this case were part of such a system.

proponent wishes to admit the evidence, beyond offering it for the truth of the matter asserted, is immaterial. How the hearsay evidence supports the proponent's trial theory or fits into the proponent's trial strategy does not affect its admissibility under an exception under the rules.

Where a trial court's decision to admit evidence is within the zone of reasonable disagreement and is correct under any theory of law applicable to the case, the admission will be upheld. *Walters*, 247 S.W.3d at 217. Because the documents about which appellant complains are excepted from the hearsay rule either as records of a religious organization or family records, or both, the trial court did not abuse its discretion by admitting these documents. We overrule appellant's fourth point of error as it relates to hearsay.

### *Confrontation*

In his third point of error, appellant contends that the admission of the complained-of documents violated his constitutional right to confront and cross-examine witnesses under the Confrontation Clause of the Sixth Amendment to the United States Constitution.[14]

The Confrontation Clause provides that, in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him. *Pointer v. Texas*, 380 U.S. 400, 403 (1965); *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008); *see* U.S. Const. amend. VI. This procedural guarantee bars the admission of testimonial statements of a witness who does not appear at trial unless the witness is unavailable and the defendant had a prior opportunity to

---

[14] As noted previously, appellant asserted a violation of similar confrontation rights contained in Article 1, § 10 of the Texas Constitution. However, he failed to properly present his complaint with respect to the Texas Constitution, so we do not address it.

cross-examine him. *Bullcoming v. New Mexico*, 131 S.Ct. 2705, 2713 (2011) (citing *Crawford v. Washington*, 541 U.S. 36, 59 (2004)); *De La Paz*, 273 S.W.3d at 680. This limitation applies only to testimonial statements. *Davis v. Washington*, 547 U.S. 813, 821 (2006). The Confrontation Clause does not bar the admission of non-testimonial hearsay. *Michigan v. Bryant*, 131 S.Ct. 1143, 1153 (2011); *Sanchez*, 354 S.W.3d at 485. Thus, the threshold question in determining whether the trial court erred in admitting hearsay evidence in violation of the Confrontation Clause is whether the evidence is testimonial in nature. *Sanchez*, 354 S.W.3d at 485; *Woods v. State*, 152 S.W.3d 105, 113 (Tex. Crim. App. 2004).

Whether a statement is testimonial or non-testimonial depends on the surrounding circumstances. *Bryant*, 131 S.Ct. at 1147; *Davis*, 547 U.S. at 821. The determination hinges on the "primary purpose" of the interrogation eliciting the statement. *Bryant*, 131 S.Ct. at 1147; *De La Paz*, 273 S.W.3d at 680. That "primary purpose" is determined by objectively assessing the circumstances of the encounter or of the making of the statement and the questions and answers of the participants. *Bryant*, 131 S.Ct. at 1156. The focus is on the objective purpose of the statement or interview, not the declarant's expectations. *Davis*, 547 U.S. at 822-23; *Coronado v. State*, 351 S.W.3d 315, 324 (Tex. Crim. App. 2011); *De La Paz*, 273 S.W.3d at 680. The relevant inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred. *Bryant*, 131 S.Ct. at 1156.

Generally, a hearsay statement is "testimonial" when the surrounding circumstances objectively indicate that the primary purpose of the interview or interrogation is to establish or prove past events potentially relevant to later criminal prosecution. *Davis*, 547 U.S. at 822-23; *De La Paz*, 273 S.W.3d at 680; *see Bullcoming*, 131 S.Ct. at 2714 n.6 (quoting *Davis*, 547 U.S. at 822) ("To rank as 'testimonial,' a statement must have a 'primary purpose' of 'establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution.'"). In such a situation, the person offering information is literally bearing testimony. *De La Paz*, 273 S.W.3d at 680.

Whether a statement is testimonial is a question of law. *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010); *De La Paz*, 273 S.W.3d at 680. Although we defer to the trial court's determination of historical facts and credibility, we review *de novo* the constitutional ruling of whether a statement is testimonial or non-testimonial. *Langham*, 305 S.W.3d at 576; *Wall v. State*, 184 S.W.3d 730, 742 & n.44 (Tex. Crim. App. 2006). In making that judgment, we determine whether the surrounding circumstances objectively indicate that the primary purpose of the making of the statement is to establish or prove past events potentially relevant to later criminal prosecution. *See Langham*, 305 S.W.3d at 576; *De La Paz*, 273 S.W.3d at 680.

Here, the record establishes that the statements appellant complains of were non-testimonial. The evidence, including testimony about the purpose of making the records and the documents themselves, reflects that the primary purpose of the making of the statements contained in the church and family records admitted at trial was to document the personal and family histories of FLDS members. An objective person making such statements would not understand the making of the statements to be for the purpose of establishing facts relevant to later criminal

prosecution. The focus was on documenting personal, family, and religious history, rather than on collecting information for use in a later prosecution.[15] Therefore, we hold that the statements were non-testimonial. *See Davis*, 547 U.S. at 822; *Langham*, 305 S.W.3d at 576. The admission of these documents did not violate appellant's right to confrontation. We overrule appellant's third point of error.

### *Due Process and Due Course of Law*

In his fifth and sixth points of error, appellant asserts that the admission of the complained-of documents violated, generally, his right to due process under the United States Constitution and his right to due course of law under the Texas Constitution. *See* U.S. Const. Amend. XIV, § 1; Tex. Const. Art. 1, § 19. As discussed previously, appellant failed to proffer any argument or authority with respect to these general constitutional claims and therefore waived any error as to these claims due to inadequate briefing. *See* Tex. R. App. P. 38.1(i); *Hankins*, 132 S.W.3d at 385; *Leza*, 351 S.W.3d at 358.

Nevertheless, as discussed above, we have determined that the trial court did not err in admitting the complained-of documentary evidence. Thus, there is no evidentiary error that denied appellant a fundamentally fair trial. We conclude that no violation of due process or due course of law is shown. Appellant's fifth and sixth points of error are overruled.

---

[15] The record reflects that this documentation of significant life events was essential for the spiritual salvation of the FLDS members. Testimony at trial indicated that, according to FLDS doctrine and teachings, whatever was recorded on earth would be recorded in heaven. If it was not recorded on earth, it would not be recorded in heaven. If it is not recorded in heaven, one does not gain eternal salvation.

### III. MOTION TO QUASH THE INDICTMENT

In points of error seven through ten, appellant challenges the trial court's denial of his motion to quash the indictment, which complained of impermissible grand jury procedures in Schleicher County. These four points of error and the arguments made are identical to those raised and addressed in *Jeffs v. State*, No. 03-10-00272-CR, 2012 WL 601846, at *11-18 (Tex. App.—Austin Feb. 24, 2012, no pet. h.). There, we concluded that the trial court did not abuse its discretion in denying appellant's motion to quash. *See id.* at *18. We do not repeat that discussion here. For the reasons stated in our opinion in *Jeffs*, we overrule appellant's points of error seven through ten.

### IV. MOTION TO SUPPRESS EVIDENCE

In points of error eleven through thirty-one, appellant contests the trial court's denial of his motion to suppress. These twenty-one points of error and the arguments made are identical to those raised and addressed in *Emack v. State*, 354 S.W.3d 828, 833-40 (Tex. App.—Austin 2011, no pet. h.), and *Jeffs v. State*, 2012 WL 601846, at *4-11. In those opinions, we concluded that the trial court did not abuse its discretion in denying appellant's motion to suppress. *See Emack*, 354 S.W.3d at 833-40; *Jeffs*, 2012 WL 601846, at *4-11. We do not repeat that discussion here. For the reasons stated in our previous opinions in *Emack* and *Jeffs*, we overrule appellant's points of error eleven through thirty-one.

## V. PUNISHMENT EVIDENCE

In his final point of error, appellant contends that the trial court erroneously admitted the testimony of two witnesses, Carolyn Jessop and Lawrence Beall, during the punishment phase of trial. He argues that the court erred in allowing "irrelevant and prejudicial expert witnesses to testify to victim impact . . . in violation of Rule 702 and *Daubert*."[16] In this point, appellant urges several legal complaints: relevance of the testimony, prejudicial effect of the testimony, qualifications of these witnesses as experts, and reliability of the opinions of these experts.[17]

### *Standard of Review*

We review a trial court's decision to admit punishment evidence under an abuse-of-discretion standard. *Davis*, 329 S.W.3d at 802; *Walters*, 247 S.W.3d at 217. We may not disturb a trial court's evidentiary ruling absent an abuse of discretion. *McGhee v. State*, 233 S.W.3d 315, 318 (Tex. Crim. App. 2007). The trial court abuses its discretion only when its decision lies "outside the zone of reasonable disagreement." *Davis*, 329 S.W.3d at 802; *Walters*, 247 S.W.3d at

---

[16] In his complaint, appellant references *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993). In Texas, for expert testimony based on "hard" science, we employ the *Kelly* test for reliability, which adopted procedural and substantive limitations on the admission of expert scientific testimony consistent with the standards set forth in *Daubert*. *See Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992). However, for evaluating the reliability of expert testimony in fields of study outside the hard sciences, the so-called "soft" sciences, we use the framework set forth by the Texas Court of Criminal Appeals in *Nenno v. State*, 970 S.W.2d 549, 561 (Tex. Crim. App. 1998), *overruled on other grounds by State v. Terrazas*, 4 S.W.3d 720 (Tex. Crim. App. 1999). *See Coble v. State*, 330 S.W.3d 253, 274 (Tex. Crim. App. 2010). The *Nenno* test is the applicable test for the complained-of expert testimony in this point of error.

[17] Because appellant bases this single point of error on more than one legal theory, his entire point of error is multifarious. *See* Tex. R. App. P. 38.1; *Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010). We will, however, in the interest of justice, review the complaints in this point of error that are preserved for appellate review.

217.  Moreover, a trial court's evidentiary ruling must be upheld if it is correct under any theory of law that is reasonably supported by the record, even if the trial judge gave the wrong reason for the ruling.  *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); *see Gonzalez v. State*, 195 S.W.3d 114, 125-26 (Tex. Crim. App. 2006) (citing *McDuff v. State*, 939 S.W.2d 607, 619 (Tex. Crim. App. 1997), and *Romero v. State*, 800 S.W.2d 539, 543-44 (Tex. Crim. App. 1990)).

### *The Testimony*

Carolyn Jessop, a former FLDS member, testified during the punishment phase of trial generally about the organization's polygamous practices.[18]  Her testimony was based on her observations and personal experiences in her thirty-five years in the FLDS church.  She testified about plural marriages, the reassignment of wives and how that could result in the break-up of families, and the structure of communal living within the polygamous families.

Also during the punishment phase of trial, Lawrence Beall, a clinical psychologist specializing in trauma awareness and treatment, testified about the traumatic effects of sexual assault on children.  At the time of trial, Dr. Beall had been a practicing clinical psychologist for twenty-one years and was the director for a trauma center in Salt Lake City, Utah.[19]  As director he developed protocols for treatment as well as training manuals.  In addition, he authored materials used in

---

[18]  In response to appellant's objection to her testimony, the State indicated that her testimony was being offered to demonstrate how the organization treated females, including young girls, as well as to provide general information on the polygamous culture.  The trial court narrowed the scope of Jessop's testimony, restricting her from testifying specifically about her own personal experiences and allowing testimony only as to the general practices of the organization.

[19]  The record reflects that Dr. Beall is also a board certified expert in traumatic stress by the Academy of Trauma Sciences and is a member of the International Society for the Study of Trauma.

professional presentations as well as an informal paper.[20]  Dr. Beall is an expert in psychological trauma, having treated approximately 5,500 patients for trauma related disorders, including victims of sexual abuse, cult abuse, and domestic violence.  His practice also included treatment of adults and children who had been members of some of the polygamous communities of FLDS as well as other polygamous communities.  The evidence also reflected that Dr. Beall was familiar with FLDS theology and had interviewed several FLDS women members in preparation for his testimony.

Dr. Beall testified about several areas of concern related to the sexual assault of children:  trauma caused to girls generally by underage sexual assault; how adolescent development is affected by underage sexual assault and placement in underage marriages; adolescent development and how that affects the ability to give consent in connection with underage marriage and underage sexual activity; conditioning or grooming practices associated with the sexual assault of children; and the impact on girls and women of living in a polygamous community.  His testimony included an explanation of how the indoctrination of children within FLDS allowed for the perpetration of crimes against children.  Basically, he indicated that the indoctrination practices, based on the doctrines and teachings of FLDS, allowed members to become compliant with and complicit in underage marriages, sexual activity with underage children, and polygamous marriages.

---

[20] Dr. Beall published an informal paper on polygamy, *The Impact of Modern Day Polygamy on Women and Children*, on his website.  The paper was, for a time, referenced in a report on the website of the Utah Attorney General.  Dr. Beall readily acknowledged that this paper was not a report of a quantitative research study, but rather a statement of his findings as a clinical psychologist treating people who had left polygamous communities.

### *Preservation of Error:  Carolyn Jessop*

To preserve a complaint for appellate review, a party must have presented a specific and timely request, motion, or objection to the trial court and must have obtained an adverse ruling. Tex. R. App. P. 33.1(a); *Pena*, 353 S.W.3d at 807; *Garza v. State*, 126 S.W.3d 79, 81-82 (Tex. Crim. App. 2004); *Peavey*, 248 S.W.3d at 470.

Appellant objected to Jessop's testimony under Article 37.07(3)(a)(1) on the ground that the evidence was not directly related to him, suggesting a complaint about relevancy.  He did not object to her testimony on the ground that it was prejudicial under Rule 403.  Nor did he object to her qualifications as an expert or to the reliability of her opinions.  Accordingly, the only complaint preserved for appellate review concerning Jessop's testimony is appellant's contention that her testimony was inadmissible under 37.07 because it was not linked to him.  For the reasons discussed below, we overrule appellant's point of error thirty-two as it relates to the testimony of Carolyn Jessop.

### *Preservation of Error:  Dr. Lawrence Beall*

At trial, appellant objected to Dr. Beall's testimony, asserting that he lacked the qualifications of an expert under Rule 702.  He also complained that the testimony was irrelevant under Article 37.07(3)(a)(1) because the evidence was not linked to him and that the evidence was more prejudicial than probative under Rule 403.  On appeal, appellant raises an additional objection under *Kelly/Daubert* regarding the reliability of Dr. Beall's opinion.  However, the objection to reliability of Dr. Beall's opinion based on the science was not raised to the trial court.  In fact, when the trial judge attempted to clarify whether appellant was "challenging the science he's testifying to

26

or challenging his qualifications," appellant responded that he was standing on the objections made at the 702 hearing.[21] However, no actual objections were made at the 702 hearing.[22] In response to the trial court's inquiry, appellant stated that "we stand on those objections to the qualifications of Dr. Beall as an expert, and we urge them in this case." Thus, when explicitly asked by the trial court, appellant objected only to Dr. Beall's qualifications, not the reliability of his opinions.

A party may challenge expert testimony on at least three specific grounds. First, a party may allege that the witness does not qualify as an expert because the witness lacks the requisite knowledge, skill, experience, training, or education in the subject matter of the expert's testimony. *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006); *see* Tex. R. Evid. 702. Second, a party may allege that the subject matter of the testimony is inappropriate because it is unreliable. *Vela*, 209 S.W.3d at 131, 133-34; *see* Tex. R. Evid. 705(c); *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992). Third, a party may allege that the testimony will not assist the fact finder in deciding the case. *Vela*, 209 S.W.3d at 131; *see* Tex. R. Evid. 401, 702. Respectively, these three requirements of expert testimony are commonly referred to as (1) qualification, (2) reliability, and (3) relevance. *Vela*, 209 S.W.3d at 131. The three requirements raise distinct questions and issues, and an objection based on one of these requirements does not preserve error as to another. *Shaw v. State*, 329 S.W.3d 645, 655 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd); *Turner v. State*,

---

[21] The 702 hearing was actually conducted in a companion case. Appellant offered the record of that hearing to be incorporated into the record of this case.

[22] The court of criminal appeals has held that the 702 or *Daubert* hearing alone does not preserve a complaint for appellate review. *See Davis v. State*, 313 S.W.3d 317, 352-53 (Tex. Crim. App. 2010) (defendant must still lodge objection at *Daubert* hearing to preserve error); *Neal v. State*, 256 S.W.3d 264, 279 (Tex. Crim. App. 2008) (failure to articulate objection after *Daubert* hearing forfeited right to challenge expert's qualifications on appeal).

27

252 S.W.3d 571, 584 n.5 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (holding that objection based on expert's qualifications did not preserve reliability issue); *see Vela*, 209 S.W.3d at 131. Similarly, if a party objects to expert testimony without identifying one or more of these issues, no error is preserved for appellate review. *Shaw*, 329 S.W.3d at 655; *Gregory v. State*, 56 S.W.3d 164, 182 (Tex. App.—Houston [14th Dist.] 2001, pet. dism'd) (holding that "[o]bjections based simply on Rule 702 and *Daubert* alone" are general objections that do not preserve error). Appellant's objection at trial covered qualification only, as opposed to reliability. His reliability complaint therefore was not preserved for appellate review.

### *Expert Qualifications*

We review a trial court's ruling on the admissibility of expert testimony for an abuse of discretion. *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009); *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). A trial court's determination of the qualifications of a witness to testify as an expert is afforded great deference. *Davis*, 313 S.W.3d at 350-51; *Rodgers v. State*, 205 S.W.3d 525, 527-28 (Tex. Crim. App. 2006). Such rulings will rarely be disturbed by an appellate court. *Vela*, 209 S.W.3d at 136; *Rodgers*, 205 S.W.3d at 528-29 n.9. As with other types of evidentiary rulings, we will uphold the trial court's decision unless it lies outside the zone of reasonable disagreement. *Layton*, 280 S.W.3d at 240 (citing *Montgomery*, 810 S.W.2d at 380).

Rule 702 of the Texas Rules of Evidence allows a witness qualified by knowledge, skill, experience, training, or education to testify on scientific, technical, or other specialized subjects if the testimony would assist the trier of fact in understanding or determining a fact issue. Tex. R. Evid. 702. A person's specialized education, practical experience, study of technical works, or some

28

combination thereof may provide him with the specialized knowledge that qualifies him to testify as an expert. *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000); *Turner*, 252 S.W.3d at 585. The qualifications of an expert witness are distinct from the reliability and relevance of the opinion testimony and, therefore, should be evaluated independently. *Vela*, 209 S.W.3d at 131; *Bryant v. State*, 340 S.W.3d 1, 7 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd); *see Escamilla v. State*, 334 S.W.3d 263, 268 (Tex. App.—San Antonio 2010, pet. ref'd). While qualification deals with the witness's background and experience, reliability focuses on the subject matter of the witness's testimony. *Vela*, 209 S.W.3d at 131.

The evaluation of an expert's qualifications entails a two-step inquiry: first, whether the witness possesses sufficient background in a particular field, and second, whether that background goes to the matter on which the witness is to give an opinion. *Davis*, 329 S.W.3d at 813; *Vela*, 209 S.W.3d at 131 (citing *Broders v. Heise*, 924 S.W.2d 148, 153 (Tex. 1996)). The focus is on the fit between the subject matter at issue and the expert's familiarity with it. *Davis*, 329 S.W.3d at 813; *Vela*, 209 S.W.3d at 133. Because the spectrum of education, skill, and training is so wide, a trial court has great discretion in determining whether a witness possesses appropriate qualifications as an expert on a specific topic in a particular case. *Davis*, 329 S.W.3d at 813; *Vela*, 209 S.W.3d at 136. To be qualified to give expert opinion testimony, the witness "must possess some additional knowledge or expertise beyond that possessed by the average person, but the gap need not necessarily be monumental." *Davis*, 313 S.W.3d at 350.

Dr. Beall, the director of a trauma center in Salt Lake City, Utah, was trained as a clinical psychologist with specialization in psychological trauma, which included sexual assault,

domestic violence, war trauma, refugee trauma, gang violence, and cult abuse. He obtained a Ph.D. from Brigham Young University and spent twenty-one years treating the victims of trauma—approximately 5,500 patients, including adults and children within the FLDS community and other polygamous communities. In preparation for his testimony, he spent approximately 125 hours researching and reviewing documents removed from the YFZ Ranch as well as interviewing several FLDS members. In addition, he demonstrated a familiarity with the theology and practices of FLDS, along with the mainstream Mormon church.[23] Dr. Beall has a degree in a field of study involving human behavior and specialized experience in behaviors associated with the victimization of children by sexual abuse, underage marriage, and plural marriage. The record shows that Dr. Beall was qualified by education, training, and experience in the field of psychology and psychological trauma. His opinions were based on general psychological principles as well as his specialized experience. He was qualified to opine about the impact of sexual assault, underage marriage, and polygamy on children. We hold that the trial court did not abuse its discretion in overruling appellant's objection to Dr. Beall's qualifications as an expert. Appellant's thirty-second point of error is overruled as it relates to the violation of Rule 702.

### Relevance and Article 37.07

Appellant characterizes the testimony of Carolyn Jessop and Dr. Beall as inadmissible "victim impact" evidence.[24] He argues against its admissibility and relevance under Article

---

[23] The evidence showed that Dr. Beall was trained as an elder in the Mormon church.

[24] The State did not dispute this characterization at trial, although some of the State's responses to appellant's objections at trial indicated that the evidence was offered to demonstrate appellant's character.

30

37.07(3)(a)(1) of the Texas Code of Criminal Procedure on the ground that the evidence is not directly linked to him nor related to M. Barlow, the victim in this case. However, a review of the testimony of both witnesses reveals that the evidence is more appropriately characterized as evidence of appellant's character. More specifically, the testimony of these witnesses constituted evidence showing the beliefs and character of appellant as demonstrated by his association with FLDS. We do not construe the complained-of evidence to be evidence of victim impact at all, but rather evidence of appellant's character. We analogize it to gang evidence in that it demonstrates appellant's beliefs and character through his participation and membership in an organization that, per doctrine and practice, engages in activities that constitute crimes against children.

Section 3(a) of article 37.07 of the Texas Code of Criminal Procedure governs the admissibility of evidence at the punishment phase of a non-capital criminal trial and grants the trial court broad discretion to admit evidence that the court deems relevant to sentencing. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2011); *Sims v. State*, 273 S.W.3d 291, 295 (Tex. Crim. App. 2008). Admissibility of evidence at the punishment phase of a trial of a non-capital felony offense is a function of policy rather than relevancy. *Hayden v. State*, 296 S.W.3d 549, 552 (Tex. Crim. App. 2009); *Come v. State*, 82 S.W.3d 486, 491 (Tex. App.—Austin 2002, no pet.). In ascertaining what is relevant to sentencing, the focus is on what is helpful to a jury in deciding an appropriate sentence for a defendant. *Sims*, 273 S.W.3d at 295; *McGhee*, 233 S.W.3d at 318; *Come*, 82 S.W.3d at 491. Giving complete information about the defendant so the jury can tailor an appropriate sentence is one of the policy reasons to be considered when determining whether to

31

admit punishment evidence. *Erazo v. State*, 144 S.W.3d 487, 491 (Tex. Crim. App. 2004) (citing *Mendiola v. State*, 21 S.W.3d 282, 285 (Tex. Crim. App. 2000)).

Evidence concerning one's beliefs and associations may be admissible if shown to be relevant. *Davis*, 329 S.W.3d at 805; *Mason v. State*, 905 S.W.2d 570, 576 (Tex. Crim. App. 1995) (citing *Dawson v. Delaware*, 503 U.S. 159, 161 (1992)); *Shelton v. State*, 41 S.W.3d 208, 214 (Tex. App.—Austin 2001, pet. ref'd). The court of criminal appeals has recognized that when the defendant is charged with an act of violence, membership in an organization with a reputation for violent activities is relevant evidence because it relates to his character. *Beasley v. State*, 902 S.W.2d 452, 456 (Tex. Crim. App. 1995); *Anderson v. State*, 901 S.W.2d 946, 950 (Tex. Crim. App. 1995). Therefore, evidence of a defendant's gang membership may be relevant and admissible at the punishment stage of a trial to show the character of the accused. *Jones v. State*, 944 S.W.2d 642, 652-53 (Tex. Crim. App. 1996); *Beasley*, 902 S.W.2d at 456. This is because evidence of gang membership allows the jury to make an informed decision regarding the character of the defendant when determining the appropriate punishment to assess. *See Anderson*, 901 S.W.2d at 950.

We believe the principles allowing for the admission of evidence of gang membership are, in general, applicable here. If the defendant's membership in an organization and the organization's nature and activities give the jury valuable information regarding the character of the defendant, such information should be allowed into evidence. *See Thompson v. State*, 33 S.W.3d 847, 853 (Tex. App.—Tyler 2000, no pet.) (holding that trial court did not abuse its discretion in admitting evidence of appellant's membership in Republic of Texas and reputation of

that organization). The jury is concerned at the punishment phase with evaluating a defendant's background and character. A person's beliefs and associations reflect his background and character. Thus, evidence of a defendant's membership in an organization and that organization's activities is admissible because it is relevant to the issue of the defendant's character. As Judge Mansfield noted in his concurring opinion in *Anderson*, "[i]t is beyond dispute that evidence of an individual's membership in the Boy Scouts, Rotary Club, or the Shriners is admissible at the punishment stage as evidence of good character. A plain reading of Article 37.07 leads to the conclusion that membership in organizations dedicated primarily to illegal aims . . . is admissible at punishment as evidence of bad character." *Anderson*, 901 S.W.2d at 952 (Mansfield, J., concurring). Here, where appellant was charged with a sexual crime against a child, membership in an organization that routinely engages in activities that result in sexual crimes against children is relevant evidence because it relates to appellant's character.

In order to prove the relevance of a defendant's membership in an organization or group, the State must show proof of (1) the group's violent and illegal activities, and (2) the defendant's membership in the organization. *Davis*, 329 S.W.3d at 805; *Mason*, 905 S.W.2d at 577; *Shelton*, 41 S.W.3d at 214. Once evidence of group membership is established, the prosecution must then present to the jury evidence of the activities of the group generally. *See Beasley*, 902 S.W.2d at 456; *Anderson*, 901 S.W.2d at 950 ("Although relevant, gang membership alone would be meaningless to a jury which has no knowledge of the gang's purpose or activities."). "It is essential for the jury to know the types of activities the [group] generally engages in so that they can determine if [the defendant's group] membership is a positive or negative aspect of his character, and

subsequently his character as a whole." *Beasley*, 902 S.W.2d at 456. It is not necessary to link the accused to the bad acts or misconduct generally engaged in by group members, so long as the jury is (1) provided with evidence of the defendant's group membership, (2) provided with evidence of the character and reputation of the group, (3) not required to determine if the defendant committed the bad acts or misconduct, and (4) only asked to consider reputation or character of the accused. *See id.* at 457.

In the instant case, the State presented evidence of both group membership and the group's activities. The undisputed evidence, including church records reflecting his priesthood position within the organization, showed that appellant was a member of FLDS. The complained-of testimony of Jessop and Dr. Beall provided evidence of the illegal activities of FLDS. From their testimony, the jury learned that the doctrine and practices of FLDS promote underage and plural marriages that result in the sexual assault of children and the commission of bigamy. Jessop testified about the underage marriages, polygamous practices, reassignment of wives, and sexual activity with underage children. Dr. Beall provided information of the harmful impact of underage marriages, polygamous marriages, and sexual assault on children demonstrating the violent nature of the organization's activities.

We conclude that appellant's membership in an organization that promotes and practices polygamy and underage marriages that result in the sexual assault of children is relevant to the question of appellant's character for purposes of punishment. Accordingly, the trial court did not abuse its discretion in allowing Carolyn Jessop and Dr. Beall to testify during the punishment

34

phase. Appellant's thirty-second point of error is overruled as it relates to relevance and the violation of Article 37.07.

### *Prejudice and Rule 403*

Having determined that evidence of the appellant's membership in FLDS was relevant, we must next weigh its probative value against its prejudicial effect. Rule 403 allows for the exclusion of otherwise relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Davis*, 329 S.W.3d at 806; *Williams v. State*, 958 S.W.2d 186, 196 (Tex. Crim. App. 1997). "The term 'probative value' refers to the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence." *Davis*, 329 S.W.3d at 806 (citing *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007)). "'Unfair prejudice' refers to a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.* All testimony and physical evidence are likely to be prejudicial to one party or the other. *Davis*, 329 S.W.3d at 806; *Jones*, 944 S.W.2d at 653. It is only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value that Rule 403 is applicable. *Davis*, 329 S.W.3d at 806; *Williams*, 958 S.W.2d at 196.

Evidence of appellant's FLDS membership was obviously unfavorable to appellant, but we conclude it was not unfairly prejudicial. It came as part of a larger examination of his character, behavior, and beliefs—which included the endorsement of the FLDS practice of underage

marriage that subjected children to sexual assault. In this case, the jury received evidence that appellant participated in the underage marriage of three of his daughters, two at the age of fifteen and one at the age of fourteen. The evidence also revealed that on the day he married M. Barlow, appellant also married J. Steed, a young lady who had been reassigned to him from another FLDS member. In addition, the jury heard testimony about appellant's devotion to his faith. This made the evidence of the FLDS practices even more probative because the faith to which appellant adheres engages in activities, prescribed by church doctrine, that result in crimes against children.

All of this evidence, taken together, revealed a man whose life was centered around a belief system that, in practice, regularly and routinely involved activities that resulted in crimes against children. The evidence of appellant's FLDS membership was but one of the factors that allowed the jury to rationally gauge the probability that appellant would commit a similar sexual assault or be complicit in the sexual assault of other children. This evidence was not so unfairly prejudicial that there was a clear disparity between the degree of the prejudice and its probative value. The trial court therefore did not abuse its discretion in admitting this evidence. Appellant's thirty-second point of error is overruled as it relates to the violation of Rule 403.

**CONCLUSION**

Having found that the evidence is sufficient to prove both penetration and territorial jurisdiction, we hold the evidence is sufficient to support appellant's conviction for sexual assault of a child. In addition, we hold that the trial court did not abuse its discretion in admitting the church and family records recovered from the YFZ Ranch or the testimony of Carolyn Jessop and Lawrence

36

Beall during the punishment phase of trial.  We further hold that the trial court did not abuse its discretion in denying appellant's motion to quash the indictment and motion to suppress evidence.

The judgment of conviction is affirmed.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Affirmed

Filed:   March 16, 2012

Do Not Publish