

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### No. AP-74,466

**GREGORY RUSSEAU, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON DIRECT APPEAL IN CAUSE NO. 114-0750-02
## FROM THE 114TH JUDICIAL DISTRICT COURT
## SMITH COUNTY

**HOLCOMB, J., delivered the opinion of the Court, in which KELLER, P.J., MEYERS, PRICE, WOMACK, HERVEY, and COCHRAN, JJ., joined. JOHNSON, J., joined except as to issue number seventeen, in which she concurred. KEASLER, J., concurred.**

In October 2002, a Smith County jury, after hearing evidence, found appellant guilty of the

capital murder of James Syvertson. *See* Tex. Pen. Code § 19.03(a)(2). That same jury, after hearing

additional evidence, answered three statutory special issues[1] in such a way that the trial court was

---

[1]  The three special issues were as follows:

(continued...)

required to assess appellant's punishment at death. *See* Art. 37.071, § 2(b), (e) & (g).[2] In June 2005, we affirmed the trial court's judgment as it related to appellant's conviction, reversed it as it related to his punishment, and remanded the case to the trial court for a new punishment hearing. *Russeau v. State*, 171 S.W.3d 871, 887 (Tex.Crim.App. 2005). In April 2007, the trial court held a new punishment hearing before a new Smith County jury. At the conclusion of that hearing, the trial court, acting in accordance with the jury's answers to the three special issues, again assessed appellant's punishment at death. Now, on direct appeal from that second punishment hearing, appellant brings seventeen issues, which we have rearranged to facilitate a more orderly discussion.[3] We will affirm the trial court's judgment.

In issues numbers one and two, appellant argues that "[t]he evidence brought forth at trial, while possibly sufficient to show that [he] may be guilty of burglary or theft, [was] insufficient, either legally or factually, to prove that [he] is guilty of capital murder." Appellant argues further

---

[1](...continued)
(1) "Is there a probability that the defendant, Gregory Russeau, would commit criminal acts of violence that would constitute a continuing threat to society?"

(2) "Did the defendant, Gregory Russeau, actually cause the death of the deceased or did not actually cause the death of the deceased but intended to kill the deceased or another or anticipated that a human life would be taken?"

(3) "Taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, is there sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed?"

[2] All references to articles are to those in the Texas Code of Criminal Procedure.

[3] Appellant's issues are numbered 1 through12, 16, 16A, and 17 through 19. From our reading of appellant's brief, it appears that he originally planned to have issues that were numbered 13, 14, and 15 but that he ultimately decided not to assert those issues.

that "there [was] not even a scintilla of evidence to prove that [he] killed the victim or that the killing occurred to facilitate the taking of any property, or that the intent to take the property occurred before or contemporaneously with the killing." The State argues in response that "appellant may not assert an error . . . from the guilt-innocence phase of the trial when he is appealing from a retrial of . . . the punishment phase."

As we noted previously, in June 2005 we affirmed the trial court's judgment as it related to appellant's conviction,[4] reversed the trial court's judgment as it related to his punishment, and remanded the case to the trial court for a new punishment hearing. *Russeau v. State*, 171 S.W.3d at 887. On remand, the trial court's jurisdiction was statutorily limited to punishment issues. *Lopez v. State*, 18 S.W.3d 637, 640 (Tex.Crim.App. 2000). After remand, appellant's right to appeal was limited to issues that arose during remand. That being the case, appellant's issues numbers one and two, which challenge the sufficiency of the evidence to support his conviction, present nothing for our review. We overrule issues numbers one and two.

In issue number seventeen, appellant argues that the evidence adduced at the second punishment hearing was legally insufficient to support the jury's affirmative answer to the first special issue, which concerned his future dangerousness. Appellant argues in particular that: (1) "There [was] no evidence that [he] was on drugs [at the time of the murder], that the robbery had been planned in advance, or that the killing of Mr. Syvertson was particularly brutal." (2) "There [was] no evidence that he attempted to resist arrest or harm the [arresting] officers [or even] elude [them]." (3) "All of [his] prior crimes were crimes against property, not crimes of violence." (4)

---

[4] On original submission, we considered and overruled two points of error in which appellant challenged the legal and factual sufficiency of the evidence to support his conviction. *Russeau v. State*, 171 S.W.3d 871, 877-78 (Tex.Crim.App. 2005).

The State's psychiatric evidence was deserving of little weight because it lacked "a scientific basis." (5) "Appellant's disciplinary record in prison show[ed] a decrease [over time] in the number and severity of disciplinary actions taken against him."

At the second punishment hearing, the State presented 62 witnesses and numerous exhibits,[5] and appellant presented one witness.[6] The State's evidence was to the following effect: (1) On April 4, 1987, when appellant was seventeen years old, he committed the felony offense of attempted burglary of a building. (2) On February 11, 1988, appellant committed the felony offense of burglary of a habitation. (3) On May 13, 1988, appellant committed felony theft. (4) On May 16, 1988, appellant committed the felony offense of burglary of a habitation. (5) On May 17, 1988, appellant committed the felony offense of burglary of a habitation. (6) On May 23, 1988, appellant committed the felony offense of burglary of a habitation. (7) On June 27, 1988, appellant committed the felony offense of engaging in organized criminal activity. (8) On May 6, 1997, appellant committed misdemeanor theft. (9) On December 12, 1997, appellant committed the felony offense of possession of a controlled substance. (10) On September 14, 2000, appellant committed the misdemeanor offense of burglary of a vehicle. (11) On May 30, 2001, appellant committed capital murder by burglarizing 75-year-old James Syvertson's auto repair shop in Tyler and then killing him by crushing his skull with a blunt instrument. (12) At the time he killed Syvertson, appellant was

---

[5] The State's witnesses included two Tyler police officers, a Longview police officer, an FBI special agent, a forensic DNA specialist, two forensic fingerprint specialists, ten present and former guards at the Smith County Jail, twenty present and former guards in the Texas prison system, two psychiatrists, a psychologist, and a former Dallas County medical examiner. The State's exhibits consisted mostly of official records from various Smith County courts.

[6] Appellant's lone witness was a Tyler police officer, whose testimony was presented in an effort to cast doubt upon appellant's guilt of Syvertson's murder.

a chronic abuser of "crack" cocaine. (13) While incarcerated in the Smith County Jail and in the Texas prison system at various times in the 1990's and 2000's, appellant committed numerous serious infractions of the rules of conduct.

In addition to the foregoing, the State presented the testimony of two psychiatrists (Drs. Tynus McNeel and Edward Gripon) and one psychologist (Dr. Sue Stone). All three testified that the evaluation of a criminal defendant's future dangerousness was within their professional training and expertise. All three also testified that, in light of appellant's criminal and prison records and the extreme nature of the instant offense, their professional opinion was that he would probably be a future danger.

The State had the burden of proving beyond a reasonable doubt that the answer to the first special issue was "yes." Art. 37.071, § 2(c). In other words, the State had the burden of proving beyond a reasonable doubt that there is a probability that appellant, if allowed to live, would commit criminal acts of violence, so as to constitute a continuing threat to people and property. *Ladd v. State*, 3 S.W.3d 547, 557 (Tex.Crim.App. 1999). As an appellate court reviewing the legal sufficiency of the evidence to support the jury's affirmative answer to the first special issue, we must consider all of the record evidence in the light most favorable to the State and determine whether, based on that evidence and reasonable inferences therefrom, any rational jury could have found beyond a reasonable doubt that the correct answer to the first special issue was "yes." *Id*. at 558. If, given all of the evidence, a rational jury would have necessarily entertained a reasonable doubt as to the correct answer to the first special issue, we must reform the trial court's judgment to reflect a sentence of imprisonment for life. Art. 44.251(a).

Applying these principles to the instant case, we conclude that the evidence was legally

sufficient to support the jury's affirmative answer to the first special issue. On this record, a rational jury could have concluded beyond a reasonable doubt that appellant exhibited a dangerous aberration of character, that he was a chronic and increasingly dangerous violator of our state's criminal laws, and that if he were allowed to live, there is a probability that he would commit criminal acts of violence in the future, so as to constitute a continuing threat to people and property. We overrule issue number seventeen.

In issue number three, appellant argues that the trial court violated the Cruel and Unusual Punishments Clause of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment when it failed to define for the jury the term "probability" as used in the first special issue. Appellant argues that, in common usage, the term "probability" can mean "any possibility" and that, because the trial court failed to define the term, "a juror would have been compelled to answer the first special issue 'yes' if [he was] convinced that there was even the remotest probability of future violence by appellant."

The trial court did not err in failing to define the term "probability" as used in the first special issue. The term is not statutorily defined, and we presume that jurors give it its usual meaning. *Renteria v. State*, 206 S.W.3d 689, 706 (Tex.Crim.App. 2006). We overrule issue number three.

In issue number four, appellant argues that the trial court violated the Cruel and Unusual Punishments Clause of the Eighth Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment when it failed to define for the jury the phrase "criminal acts of violence" as used in the first special issue. More specifically, appellant argues:

> "'Criminal acts of violence' could be interpreted as falling at every point along the scale from deeds of grotesque savagery to the slightest assault [or even offenses that damage only property]. So long as a defendant caused some bodily

injury, or even simply physical pain, he is guilty of assault. If the function of the death penalty [statute] is to provide a principled distinction between those who deserve death and those who do not, an instruction that would exclude a person who might commit a minor assaultive offense, but is very unlikely to commit a grave act of violence, is called for. Aggravating circumstances (of which this is one) may not apply to every person convicted of murder and those aggravating circumstances may not be unconstitutionally vague." (Citations omitted; parenthetical material in original.)

The phrase "criminal acts of violence," as used in the first special issue, is not unconstitutionally vague and need not be defined for the jury. *Saldano v. State*, 232 S.W.3d 77, 91 (Tex.Crim.App. 2007); *Druery v. State*, 225 S.W.3d 491, 509 (Tex.Crim.App. 2007. "In addition, the Supreme Court of the United States has concluded that the submission of [the first] special issue, even without the definition[] in question, is sufficient to constitutionally guide the jury's determination." *Druery v. State*, 225 S.W.3d at 509. *See Jurek v. Texas*, 428 U.S. 262, 275 (1976). We overrule issue number four.

In issue number five, appellant argues that the trial court, when it instructed the jury in accordance with Article 37.071, § 2(d)(1), violated the Peaceable Assembly Clause of the First Amendment, the Cruel and Unusual Punishments Clause of the Eighth Amendment, and the Due Process Clause of the Fourteenth Amendment because it failed to define for the jury the term "militates." Appellant argues that, consistent with the named constitutional provisions, the trial court was required "to define the word 'militates' so as to preclude consideration of the defendant's age, race, sex, national origin, religion, political views or sexual orientation as a factor supporting a death sentence." Appellant argues further that "[t]he jurors were left without guidance as to how to apply this critical word and consequently may have given weight to factors which should have been excluded."

The record reflects that the trial court, in accordance with Article 37.071, § 2(d)(1), instructed the jury as follows:

> "In deliberating on Special Issue No. 1 and Special Issue No. 2 submitted in this charge, the jury shall consider all evidence admitted at the guilt or innocence stage and the punishment stage of this trial, including evidence of the defendant's background or character or the circumstances of the offense that militates for or mitigates against the imposition of the death penalty."

Appellant's argument has no merit. First, the trial court did not err in failing to define the term "militates." The term is not statutorily defined, and we presume that jurors give it its usual meaning. *Fuller v. State*, 253 S.W.3d 220, 234-235 (Tex.Crim.App. 2008); *Martinez v. State*, 924 S.W.2d 693, 698 (Tex.Crim.App. 1996). Second, appellant did not ask the trial court for the "limiting definition" of "militates" that he now claims is constitutionally required, and nothing in the record suggests that he suffered any harm, let alone egregious harm, from the lack of such a limiting definition. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984).[7] We overrule issue number five.

In issue number six, appellant argues that the trial court violated the Cruel and Unusual Punishments Clause of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment when it failed to define for the jury the phrase "continuing threat to society" as used in the first special issue. Appellant argues that "[t]he trial court's failure to define 'continuing threat to society' failed to provide sufficient guidance to the jury so as to prevent an arbitrary and capricious infliction of the death penalty."

The trial court did not err in failing to define the phrase "continuing threat to society,"

---

[7] In *Almanza*, we held that unobjected-to charge error requires reversal only if the defendant suffered egregious harm.

because the jury is presumed to understand the phrase without further instruction. *Druery v. State*, 225 S.W.3d at 509; *Ladd v. State*, 3 S.W.3d at 572-573. And, as we noted previously, the Supreme Court of the United States has concluded that the first special issue, even without the definition in question, adequately guides the jury's determination. *Jurek v. Texas*, 428 U.S. at 275. We overrule issue number six.

In issue number seven, appellant argues that the trial court, when it instructed the jury on the first two special issues in accordance with Article 37.071, § 2(d)(1),[8] violated the Cruel and Unusual Punishments Clause of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment because it failed "to instruct the jury so as to limit the scope of militating evidence in favor of death to that which a juror might regard as increasing a defendant's moral blameworthiness." Appellant argues further that "the jury instruction as given failed to preclude the jurors from giving weight to factors beyond appellant's own control."

Appellant's argument has no merit. First, the jury, in its deliberations on the first two special issues, was not limited to evidence "which a juror might regard as increasing [the] defendant's moral blameworthiness." The jury could properly consider any of the evidence submitted at trial that was relevant to the two special issues. Second, appellant did not ask the trial court for the instruction that he now claims is constitutionally required, and nothing in the record suggests that he suffered any harm, let alone egregious harm, from the lack of such an instruction. *See Almanza v. State*, 686 S.W.2d at 171. We overrule issue number seven.

In issue number eight, appellant argues that the trial court violated the Cruel and Unusual Punishments Clause of the Eighth Amendment and the Due Process Clause of the Fourteenth

---

[8] *See* discussion of issue number five, *supra*.

Amendment when it failed "to instruct the jury that [the] finding of guilt in the first phase of the trial did not foreclose consideration of evidence which they believed tended to reduce the moral blameworthiness of the defendant." This argument has no merit. As we noted previously, the trial court, in accordance with Article 37.071, § 2(d)(1), instructed the jury that, in its deliberations on the first and second special issues, it must "consider all evidence admitted at the guilt or innocence stage and the punishment stage of this trial, including evidence of the defendant's background or character or the circumstances of the offense that militates for or mitigates against the imposition of the death penalty." In addition, the third special issue itself instructed the jury to "tak[e] into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant." Although the instructions given to the jury did not track the language of the instruction that appellant now argues is constitutionally required, they had much the same meaning. We overrule issue number eight.

In issue number nine, appellant argues that the trial court violated the Cruel and Unusual Punishments Clause of the Eighth Amendment when it failed "to instruct the jury that there is no presumption in favor of death, even if [the jury] found appellant to be a 'future danger' in answer to special issue number one, and that special issue number [three], regarding mitigating circumstances, is to be taken up and considered independently, without regard to the jury's finding on [special] issue number one." This argument has no merit. The trial court, in accordance with Article 37.071, § 2(e)(1), instructed the jury that, if it answered special issues numbers one and two in the affirmative, then it would proceed to answer special issue number three either "yes" or "no." Nothing in our law required the trial court to further instruct the jury that there was "no presumption in favor of death." We overrule issue number nine.

In issue number ten, appellant argues that the trial court violated the Cruel and Unusual Punishments Clause of the Eighth Amendment "when it failed to instruct the jury so as to provide a vehicle for a juror to return a life verdict where the juror concludes that the aggravating factors, although established by the evidence, still are not so severe as to call for death as a punishment." Appellant argues further that "[t]he [jury] charge in the present case [unconstitutionally] provided no means for the jury to assess a life sentence if it believed that the aggravating factor of 'future dangerousness' existed, but was not so severe as to warrant death."

The trial court's instructions to the jury met the requirements of Article 37.071, which, in turn, met the requirements of the Eighth Amendment. *See McFarland v. State*, 928 S.W.2d 482, 520 (Tex.Crim.App. 1996). We overrule issue number ten.

In issue number eleven, appellant, citing various federal and state constitutional provisions, argues that "[t]he trial court erred when it refused to preclude the death penalty as a sentencing option or, in the alternative, to quash the indictment because a grand jury had not considered and alleged in an indictment the facts legally essential to appellant's conviction and death sentence." On original submission, we considered and rejected this argument to the extent it was based on the federal constitution, and that holding remains the law of the case. *Russeau v. State*, 171 S.W.3d at 885-887.[9] We now reject this argument to the extent it is based on our state constitution, because appellant has failed to cite the pages in the record where he made the argument to the trial court and received a ruling thereon. *See* Tex. R. App. Proc. 33.1(a) & 38.1(h). It is not our obligation to pore

---

[9] Under the doctrine of "the law of the case," if a determination of a question of law is made on an appeal to a court of last resort, that determination will be held to govern the case throughout all of its subsequent stages, including retrial and appeal. *Ex parte Granger*, 850 S.W.2d 513, 516 (Tex.Crim.App. 1993).

through the voluminous record to verify that appellant preserved his state constitutional complaint for appellate review. We overrule issue number eleven.

In issue number twelve, appellant argues that "[t]he Texas death penalty statute is unconstitutional for its failure to provide for meaningful appellate review of the sufficiency of the evidence [to support] the jury's negative answer to the third special issue, the mitigation issue." We considered and rejected this argument on original submission, and that holding remains the law of the case. *Russeau v. State*, 171 S.W.3d at 886. We overrule issue number twelve.

In issues numbers sixteen and sixteen-a, appellant argues that "[t]he trial court erred in admitting [psychiatric] evidence of [his] future dangerousness" without first holding a "*Daubert* hearing" and requiring the State "to establish the predicate" for the admission of such psychiatric evidence. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) (discussing admissibility of scientific evidence under Fed. R. Evid. 702); *Kelly v. State*, 842 S.W.2d 568 (Tex.Crim.App. 1992) (discussing admissibility of scientific evidence under Tex. R. Evid. 702). He argues further that he "requested a *Daubert* hearing" but that "the trial court refused to hold [one], choosing instead to take judicial notice of prior proceedings and her rulings therein."

At the first punishment hearing, the trial court admitted, over appellant's objection, the testimony of Drs. McNeel, Gripon, and Stone on the subject of his future dangerousness. Before those experts testified, the trial court held a "*Daubert* hearing" to determine the admissibility of their testimony under Texas Rule of Evidence 702. We held on original submission that "the trial court did not abuse its discretion in admitting the expert testimony." *Russeau v. State*, 171 S.W.3d at 884. At the second punishment hearing, from which appellant now appeals, the State again presented the testimony of McNeel, Gripon, and Stone on the subject of appellant's future dangerousness. Before

they testified at the second punishment hearing, the following transpired:

> Defense Counsel: Judge, in our last trial, we had a *Daubert* hearing. We want to re-urge that *Daubert* hearing, and there's nothing to add to it. I guess the Court can take judicial notice of it.

> The Court: I've taken judicial notice of all the prior proceedings and will as to the rulings with respect to that. Okay. Maintain the same rulings.

> Defense Counsel: Yes, Your Honor. Thank you.

A trial court's ruling admitting evidence will not be reversed on appeal absent a clear abuse of discretion. *Ramos v. State*, 245 S.W.3d 410, 417-418 (Tex.Crim.App. 2008). Under the circumstances of this case, we discern no clear abuse of discretion on the part of the trial court in admitting the expert testimony without holding a second *Daubert* hearing. When appellant, at the second punishment hearing, "re-urge[d] th[e] *Daubert* hearing" held at the first punishment hearing, he conceded that "there's nothing to add to it" and "guessed" that the trial court could take judicial notice of it. The trial court then stated that it had already taken judicial notice of the earlier *Daubert* hearing and would "[m]aintain the same rulings" (which we had already upheld) with respect to the admissibility of the expert testimony. Although appellant objected to the admission of the expert testimony, he did not, as he now claims, request a second *Daubert* hearing, and the trial court could have reasonably concluded that nothing would be accomplished by holding one. We overrule issues numbers sixteen and sixteen-a.

In issue number eighteen, appellant argues that the trial court violated the Cruel and Unusual Punishments Clause of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment when the trial court, in accordance with Article 37.071, § 2(d)(2) and (f)(2), "instructed the jury that a unanimous vote was required to answer the first and second special issues in the

affirmative and to answer the third special issue in the negative [and] that at least ten jurors were required to answer the first two special issues in the negative and the third special issue in the affirmative." We considered and rejected this constitutional attack on the "10-12 rule" on original submission, and that holding remains the law of the case. *Russeau v. State*, 171 S.W.3d at 886. We overrule issue number eighteen.

Finally, in issue number nineteen, appellant argues that "[t]he Texas capital sentencing statute's failure to inform the jury that a single holdout [juror] on a special issue would result in [an] automatic life sentence violates the [Cruel and Unusual Punishments Clause of the] Eighth [Amendment] and [the Due Process Clause of the] Fourteenth Amendment[]." We considered and rejected this argument on original submission, and that holding remains the law of the case. *Ibid*. We overrule issue number nineteen.

Having found no reversible error, we affirm the judgment of the trial court.


DELIVERED: JULY 1, 2009.

PUBLISH