**Opinion filed October 4, 2018**



In The

# Eleventh Court of Appeals

_____

## No. 11-16-00279-CR

_____

## STEFAN RAINER FORKERT, Appellant
## V.
## THE STATE OF TEXAS, Appellee

**On Appeal from the 238th District Court**
**Midland County, Texas**
**Trial Court Cause No. CR47750**

## M E M O R A N D U M   O P I N I O N

Appellant, Stefan Rainer Forkert, appeals his conviction for attempted aggravated sexual assault. Appellant argues in four issues that the trial court erred (1) by allowing the adult victim to testify by two-way closed-circuit television, (2) by allowing an outcry witness to testify, (3) by allowing a witness to give hearsay testimony that did not fall within the medical-diagnosis-or-treatment exception to the hearsay rule, and (4) in convicting Appellant of attempted aggravated sexual assault when the evidence was insufficient. We affirm.

# I. *Background Facts*

Appellant was charged by information with two counts of attempted aggravated sexual assault.[1]  The jury found Appellant guilty as to Count I and not guilty as to Count II.  The jury assessed punishment at confinement for twenty years in the Institutional Division of the Texas Department of Criminal Justice and a fine of $10,000.

M.R. was a 21-year-old woman, diagnosed with ADHD and Asperger's syndrome with borderline intellectual functioning, when she was allegedly assaulted by her stepfather.  M.R. had graduated high school through a special education program, and although unemployed at time of trial, she had previously worked part-time at a hospital washing dishes.  On December 11, 2015, M.R. told her physician, Dr. Ikemefuna Okwuwa, that Appellant was having her expose her breasts and her privates and that "sometimes [Papa] wants to take it too far."  Dr. Okwuwa reported the incident to the authorities, and Officer Brianna Rodriguez interviewed M.R. and her mother, Mrs. Forkert.

Detective Rosie Rodriguez became involved in the case around December 22, 2015.  Mrs. Forkert gave Detective Rodriguez a letter written by Appellant to M.R., which stated in part: "I know you did not lie . . . .  Please stick to the story that you told a <u>lie</u>.  I promise not to ever do it again."

After speaking to Mrs. Forkert, Detective Rodriguez directed M.R. to the Children's Advocacy Center for an interview because she perceived M.R. to have the capacity of a seven- to ten-year-old.  Detective Rodriguez monitored M.R.'s interview by "video."  Afterwards, she directed M.R. to a hospital for an

---

[1]We note that the record reflects that Appellant had been charged by indictment with a greater offense and that, when the charges were refiled by information as lesser included offenses of those contained in the indictment, Appellant waived the necessary rights in open court.

examination by a sexual assault nurse examiner (SANE). Cori Armstead, a SANE, examined M.R. During the exam, M.R. stated that Appellant had touched her on her private parts under her clothes, and M.R. pointed to the area on her body. M.R. stated that she would not let Appellant put his private part in her private part. While the SANE was examining M.R., Detective Rodriguez interviewed Appellant at the Midland Police Department. Appellant admitted to touching M.R. in her vaginal area. The interview was recorded and played for the jury at trial.

At a pretrial hearing, the prosecutor sought to have M.R. testify by closed-circuit television (CCTV). Because of M.R.'s intellectual impairment, complicated by ADHD and Asperger's syndrome, M.R. had a fear of strangers, crowds, and Appellant. When M.R. was stressed, she spoke like a baby and acted like a seven-year-old. Mrs. Forkert testified that M.R. would be less reliable if she had to testify in the courtroom due to her fear of crowds and Appellant. The trial court approved the use of CCTV over Appellant's objection.

At trial, M.R. testified that, when her mother was away, Appellant would touch her on her "bathroom place," both over and under her clothes. M.R. also testified that, once or twice, Appellant took off her shirt and her pants and removed his pajama pants, remaining in his underwear. Appellant also attempted to put his "bathroom place" in her "bathroom place."

## II. *Testimony Via CCTV*

In his first issue, Appellant contends that the trial court abused its discretion in allowing M.R. to testify via CCTV. Specifically, Appellant complains that his confrontation rights under the Sixth Amendment and Article I, section 10 of the Texas Constitution were violated. The State responds that the trial court did not abuse its discretion because M.R. could not testify in court reliably because of her medical condition and fear of strangers, crowds, and Appellant.

## A. Pretrial hearing on CCTV

M.R.'s mother testified at the pretrial hearing that M.R. was diagnosed with ADHD and Asperger's syndrome. Socially, M.R., who was twenty-two years old at the time of trial, performed at a much younger level and had difficulty in groups. Mrs. Forkert gave the example that, although M.R. accompanies her to church often, M.R. is terrified and hides behind her. M.R. considers more than three people a crowd and regresses when she encounters a crowd. When M.R. becomes stressed, she seeks comfort from her mother by hiding behind her or physically next to her or she may grab a stuffed animal. When M.R. has spoken to her therapist or attorneys about Appellant's actions, she regresses to the level of a seven-year-old. When very scared and stressed, M.R. has refused to respond to people. Mrs. Forkert questioned the reliability of M.R.'s testimony if she were to testify in open court rather than CCTV. Dr. Shailesh Jain, M.R.'s psychiatrist, provided the court with a letter, which was admitted into evidence, confirming M.R.'s diagnosis. In the letter, Dr. Jain stated that M.R. "has been diagnosed with Asperger Syndrome and ADHD with borderline intellectual functioning. I am really concerned about her ability to testify in court and the additional stress that it will bring to her." On cross-examination, Mrs. Forkert testified that M.R. goes nowhere by herself other than to work by paratransit.

Kristin Dennis, M.R.'s therapist, testified that she and M.R. had had approximately twenty meetings. She testified that M.R.'s ability to function was directly related to her stress level and how comfortable she was with her surroundings. If there were many people around, she clung to her mother and behaved like a seven- or eight-year-old. Dennis opined that M.R. would be better able to testify through CCTV as it would lower her stress level.

*B. The Right of Confrontation*

The Sixth Amendment provides, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). In *Craig*, CCTV was used to present a child's testimony. *Id.* at 842–43. The child victim testified under oath, was subject to full contemporaneous cross-examination, and was observed by the judge, jury, and defendant during that testimony. *Id.* at 857. The Court held that the "Confrontation Clause does not prohibit use of a procedure that, despite the absence of face-to-face confrontation, ensures the reliability of the evidence by subjecting it to rigorous adversarial testing and thereby preserves the essence of effective confrontation." *Id.* The right of confrontation was not diminished because every other aspect of the right to confrontation except face-to-face confrontation in the courtroom was given full force.[2]

In *Gonzales v. State*, 818 S.W.2d 756, 764 (Tex. Crim. App. 1991), the Court of Criminal Appeals upheld the use of CCTV to obtain the testimony of a child witness after determining that the system was necessary to protect the child's well-being and that she would suffer significant trauma if forced to testify in the courtroom. *Accord Marx v. State*, 987 S.W.2d 577, 580 (Tex. Crim. App. 1999) (holding no Sixth Amendment violation when trial court determined that procedure was necessary to prevent significant emotional trauma to the child witness).

---

[2]Elements of the confrontation right include the following: (1) the giving of testimony under oath, (2) the opportunity for cross-examination, (3) the ability of the factfinder to observe demeanor evidence, and (4) the reduced risk that a witness will wrongfully implicate an innocent defendant when testifying in his presence. *See Craig*, 497 U.S. at 845–46.

While a face-to-face confrontation is preferred, it is "a preference that 'must occasionally give way to considerations of public policy and the necessities of the case[.]" *Craig*, 497 U.S. at 849 (quoting *Mattox v. United States*, 156 U.S. 237, 243, (1895)). The ability to present witness testimony through CCTV or other digital means has been extended to pregnant women and other fragile or absent witnesses. *See Molina v. State*, No. 01-17-00075-CR, 2018 WL 3150419, at *3 (Tex. App. Houston [1st Dist.] June 28, 2018, pet. ref'd) (mem. op.) (electronic testimony of pregnant witness did not violate defendant's right to confrontation); *Montague v. State*, No. 03-14-00266-CR, 2016 WL 112378, at *5 (Tex. App.—Austin, Jan. 6, 2016, pet. ref'd) (pregnant witness testified via closed-circuit television) (mem. op., not designated for publication); *Rivera v. State*, 381 S.W. 3d 710, 712 (Tex. App.—Beaumont 2012, pet. ref'd) (witness on active duty in Iraq testified by video conference); *Stevens v. State*, 234 S.W.3d 748, 782 (Tex. App.—Fort Worth 2007, no pet.) (elderly, out-of-town witness testified via closed-circuit television).

*C. Analysis*

Although M.R. was twenty-two years old at the time of trial, her borderline intellectual functioning combined with Asperger's syndrome and ADHD rendered her childlike under stressful situations. Testimony from her mother and therapist revealed the potential for M.R. to suffer significant emotional trauma if she were forced to testify in a crowded courtroom. In addition, Mrs. Forkert and Dennis testified that the reliability of M.R.'s testimony would be diminished by the stress associated with the live courtroom. The CCTV procedure used to present M.R.'s testimony preserved the elements of in-court testimony. *See Craig*, 497 U.S. at 845–46. M.R. was sworn in and testified under oath. The courtroom was set up so that M.R. could see the prosecutor and Appellant's counsel as well as Appellant. Counsel, Appellant, and the jury could observe M.R. while she testified, including

6

during contemporaneous cross-examination. The evidence supports the trial court's conclusion that permitting M.R. to testify via CCTV was necessary to protect her welfare, that she would be traumatized by a crowded courtroom and Appellant's presence, and that the trauma would be "more than *de minimis*." *See Walker v. State*, 461 S.W.3d 599, 605–06 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (mother's testimony regarding daughters' fears of the defendant was sufficient to demonstrate that use of CCTV was necessary); *see also Craig*, 497 U.S. at 855–56; *Gonzales*, 818 S.W.2d at 762.

Appellant complains that the trial court did not make formal findings of fact that (1) the use of the closed-circuit television system is necessary to protect the welfare of the particular child witness, (2) the child witness would be traumatized by the presence of the defendant, and (3) the emotional distress suffered by the child witness in the presence of the defendant is more than mere nervousness or excitement or some reluctance to testify. *See Craig*, 497 U.S. at 855–56; *Hightower v. State*, 822 S.W.2d 48, 51 (Tex. Crim. App. 1991). The trial court conducted a hearing on the necessity for using CCTV, and by permitting its use, the court implicitly made the constitutionally required findings. *Barnes v. State*, 165 S.W.3d 75, 84 (Tex. App.—Austin 2005, no pet.).[3] We overrule Appellant's first issue.

### III. Testimony from Outcry Witness

Appellant asserts in his second issue that the trial court abused its discretion when it permitted Dr. Okwuwa to testify as an outcry witness because (1) M.R.'s outcry was not specific enough to meet the hearsay requirements set forth in Article 38.072 of the Texas Code of Criminal Procedure and (2) the evidence

---

[3]Appellant did not request formal findings of fact on the issue.

failed to establish that M.R. is a person with a disability under Article 38.072. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 (West Supp. 2017). The State responds that Appellant did not preserve his objection to the outcry's specificity and that the evidence established that M.R. was a disabled person.

### A. Standard of Review

We review a trial court's evidentiary rulings for an abuse of discretion. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018); *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion when its ruling falls outside the zone of reasonable disagreement. *Gonzalez*, 544 S.W.3d at 370. Under the abuse-of-discretion standard, we must uphold the trial court's ruling if the record reasonably supports it and it is correct under any legal theory applicable to the case. *Neale v. State*, 525 S.W.3d 800, 809 (Tex. App.—Houston [14th Dist.] 2017, no pet.). We may not substitute our judgment for that of the trial court. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

### B. Outcry Testimony

When a defendant is charged with certain offenses against a disabled individual, Article 38.072 allows the complainant's out-of-court statement into evidence so long as that statement is a description of the offense and is offered into evidence by the first adult the complainant told of the offense. CRIM. PROC. art. 38.072. A complainant's out-of-court statement is commonly referred to as an "outcry," and an adult who testifies about an outcry is known as an "outcry witness." *Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011). While such statements are generally hearsay, the Texas Code of Criminal Procedure provides a statutory exception to the hearsay rules in prosecuting certain offenses, including attempted aggravated sexual assault. CRIM. PROC. art. 38.072, § 1.

8

*C. Definitiveness of Outcry Statement and Waiver*

The proper outcry witness under Article 38.072 is the first adult to whom the disabled person or child makes a statement that describes the alleged offense in some discernable manner. *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990). The statement must give more than "a general allusion that something in the area of child abuse was going on." *Id.* Appellant contends that M.R.'s statements to Dr. Okwuwa were not specific enough to qualify under Article 38.072. The State asserts that Appellant did not preserve this complaint for appellate review.

The trial court held a hearing on the reliability of the statements. After Dr. Okwuwa's voir dire, Appellant's counsel objected to the use of Dr. Okwuwa as an outcry witness solely on the basis that M.R. was not disabled under the terms of Article 38.072. No objection was made on the basis of specificity. The objection made at trial must comport with the error complained of on appeal. *Quintero v. State*, No. 04-13-00596-CR, 2015 WL 1914595, at *3 (Tex. App.—San Antonio Apr. 15, 2015, pet. ref'd) (mem. op., not designated for publication) (holding failure to object to lack of specificity waived complaint on appeal); *see Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *see also* TEX. R. APP. P. 33.1 (error must be preserved by making complaint to trial court stating specific grounds for complaint). We hold that Appellant failed to preserve his complaint regarding specificity of the outcry.

*D. Evidence of M.R.'s Disability Under Article 38.072*

Article 38.072 permits the admission of a hearsay statement about an offense made by a person with a disability to the first person eighteen years of age or older. The statute defines a "person with a disability" as "a person 13 years of age or older who because of age or physical or mental disease, disability, or injury is substantially

9

unable to protect the person's self from harm or to provide food, shelter, or medical care for the person's self." CRIM. PROC. art. 38.072, § 3.

Mrs. Forkert testified that M.R. had an intellectual impairment as well as Asperger's syndrome and ADHD. M.R. processes things at the level of a child between the ages of seven and fourteen, depending on the level of stress. M.R. had been in special education classes throughout her education. Although she had a job washing dishes at a local hospital and used paratransit, transportation for the disabled, to go to her job, M.R. went nowhere else without her mother.

M.R.'s therapist, Dennis, testified that she had approximately twenty therapy sessions with M.R. and that M.R. exhibited a variety of behaviors. M.R. sometimes behaved on a six- to eight-year-old level and other times functioned at about a fourteen- or fifteen-year-old level. M.R. initially came to sessions accompanied by her mother, and M.R. would often cling to her mother. Dennis observed M.R.'s discomfort and regression around strangers. Dr. Okwuwa, M.R.'s physician, testified that he did not believe that M.R. was capable of caring for herself, seeking medical care for herself, or things of that nature.

The trial court withheld its ruling on the outcry witness until after M.R. testified at trial. After her testimony, the trial court found that M.R.'s statement to Dr. Okwuwa "is reliable based upon the time, content and circumstances of that statement, and that [M.R.] is a child with disabilities and that she has testified and has been available to testify in this trial." Thereafter, Dr. Okwuwa testified.

*E. Analysis*

A trial court's designation of an outcry witness will be upheld when supported by the evidence. *Garcia*, 792 S.W.2d at 92. The testimony of M.R., Mrs. Forkert, Dennis, and Dr. Okwuwa support the trial court's implicit finding that M.R. was unable to care for herself and was disabled. The trial court's exercise of its broad

discretion in admitting Dr. Okwuwa as an outcry witness falls within the zone of reasonable disagreement; we will not disturb the ruling absent a clear abuse of discretion grounded in the record. *See Garcia*, 792 S.W.2d at 91. We overrule Appellant's second issue.

## IV. *Admissibility of Testimony from SANE*

Appellant contends in his third issue that the trial court abused its discretion by permitting the SANE to repeat statements made by M.R. during the exam because those statements were hearsay.

### A. *Background*

Armstead testified that she was a licensed nurse and a certified SANE. Armstead performed a "chronic exam" of M.R. in December 2015.[4] Armstead described the process of a SANE exam beginning first with a history, which guides her assessment and treatment of the patient. Next, she proceeds with a detailed physical assessment, collecting evidence and taking pictures under certain circumstances, followed by a general exam looking specifically at the anatomy.

### B. *Standard of Review*

"A trial judge's decision on the admissibility of evidence is reviewed under an abuse of discretion standard and will not be reversed if it is within the zone of reasonable disagreement." *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011) (citing *Davis v. State*, 329 S.W.3d 798, 813–14 (Tex. Crim. App. 2010); *Russeau v. State*, 291 S.W.3d 426, 438 (Tex. Crim. App. 2009)).

---

[4]An acute exam is conducted ninety-six hours or less from the time of the alleged assault, when collection of forensic evidence is likely. A chronic exam is typically performed when the time from the assault to the exam is greater than ninety-six hours.

*C. The Law*

Texas Rule of Evidence 803, relating to hearsay exceptions, provides in part:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> . . . .
>
> (4) ***Statement Made for Medical Diagnosis or Treatment.*** A statement that:
>
> > (A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and
> >
> > (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause.

TEX. R. EVID. 803(4).

This exception assumes that the patient understands the importance of being truthful with the medical personnel involved to receive an accurate diagnosis and treatment. *Bautista v. State*, 189 S.W.3d 365, 368–69 (Tex. App.—Fort Worth 2006, pet. ref'd). "[I]t seems only natural to presume that adults, and even children of a sufficient age or apparent maturity, will have an implicit awareness that the [medical personnel]'s questions are designed to elicit accurate information and that veracity will serve their best interest." *Taylor v. State*, 268 S.W.3d 571, 589 (Tex. Crim. App. 2008). Although the proponent for introducing hearsay testimony generally has to show that the declarant knew the statements were made for the purpose of diagnosis and treatment, courts can infer from the record that the victim knew it was important to tell a SANE the truth in order to obtain medical treatment or diagnosis. *See Fahrni v. State*, 473 S.W.3d 486, 498 (Tex. App.—Texarkana 2015, pet. ref'd); *Franklin v. State*, 459 S.W.3d 670, 677 *(*Tex. App.—Texarkana 2015, pet. ref'd); *Prieto v. State*, 337 S.W.3d 918, 921 (Tex. App.—Amarillo 2011, pet. ref'd); *see also Thomas v. State*, No. 03-11-00254-CR, 2013 WL 4516168, at *3 (Tex. App.—Austin Aug. 23, 2013, no pet.) (mem. op., not designated for publication);

*Duckworth v. State*, No. 04-12-00077-CR, 2013 WL 3871058, at *1–2 (Tex. App.—San Antonio July 24, 2013, no pet.) (mem. op., not designated for publication); *Bahle v. State*, No. 05-10-01057-CR, 2012 WL 1382568, at *4 (Tex. App.—Dallas Apr. 23, 2012, no pet.) (not designated for publication).

### D. Analysis

Armstead testified that she took a history from M.R. and performed a detailed physical and genital examination. Armstead testified the purpose of the history was to learn why M.R. was having an exam, which would then guide the assessment and treatment of M.R. There was testimony that M.R. had a mental acuity between that of a seven-year-old and a fifteen-year-old, but M.R. testified that she knew the difference between the truth and a lie. There was nothing in the record to indicate that M.R. was unaware that the purpose of Armstead's questions was to provide medical treatment or diagnosis or that M.R. was unaware of the necessity to be truthful. *See Taylor*, 268 S.W.3d at 589. The record supports that M.R.'s history was taken for the purpose of medical treatment or diagnosis, and the trial court did not abuse its discretion in admitting Armstead's testimony. We overrule Appellant's third issue.

## V. *Sufficiency of the Evidence*

Appellant argues in his fourth issue that the evidence was insufficient to establish Appellant committed attempted aggravated sexual assault because (1) the information failed to establish the manner and means by which Appellant was attempting to commit the offense of aggravated sexual assault and (2) there was insufficient evidence that M.R. was disabled as defined by the aggravated sexual assault statute. The State responds that Appellant waived this issue regarding the manner and means of committing aggravated sexual assault and that there was sufficient evidence that M.R. was a disabled person under the terms of the statute.

13

*A. Standard of Review*

The sufficiency of an information or indictment is a question of law and is reviewed de novo. *Smith v. State*, 297 S.W.3d 260, 267 (Tex. Crim. App. 2009); *State v. Rodgers*, 214 S.W.3d 644, 647 (Tex. App.—Eastland 2006, pet. ref'd). In reviewing the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Such a standard not only gives the trier of fact the responsibility to resolve conflicts in the testimony and to weigh the evidence accordingly, but it also enables the factfinder to draw reasonable inferences from the facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. Indeed, the trier of fact is the sole judge of the weight and credibility of the evidence. *See Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008).

*B. Background*

Appellant was charged by information with two counts of attempted aggravated sexual assault. The jury returned a guilty verdict relating to Count I, which provided as follows:

> [Appellant] on or about and between the 30th day of October and the 11th day of December, 2015, in the County of Midland and State of Texas and before the making and filing of this information did then and there with the specific intent to commit the offense of aggravated sexual assault, did then and there attempt to commit the offense of aggravated sexual assault against [M.R.] by committing an act, to wit: by then and there touching the genitals and sexual organ of the said [M.R.] with the finger and fingers of the said [Appellant], which said act and acts amounted to more than mere preparation that tended but failed to effect

14

the commission of the offense of sexual assault intended, and the [Appellant] knew the said [M.R.] is a disabled individual, and because of mental disease or defect at the time of the attempted sexual assault, was incapable of either appraising the nature of the act or of resisting it.

The jury charge tracked the information.

### C. *Failure to Specify Manner and Means of Aggravated Sexual Assault*

Appellant contends that the information failed to establish with specificity the manner and means by which Appellant was attempting to commit the offense of aggravated sexual assault. Thus, "the Information fails to put the Appellant on notice of the crime alleged. Without such notice, the Appellant is denied due process and cannot adequately defend against the allegations . . . ." This is not a sufficiency of the evidence issue but a notice issue.

Appellant did not object to any defect as to form or substance of the information before trial. Article 1.14 of the Texas Code of Criminal Procedure provides in part:

> (b) If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding.

Appellant never objected to the information. The proper test to determine if a charging instrument charges "the commission of an offense" is whether the allegations in it are clear enough that one can identify the offense alleged even if the instrument fails to allege an element of the offense or contains additional information indicating the person charged is innocent. *See Teal v. State*, 230 S.W.3d 172, 181 (Tex. Crim. App. 2007); *Duron v. State*, 956 S.W.2d 547, 550–51 (Tex. Crim. App.

15

1997).  Appellant's failure to make a timely objection before the date of trial waives this objection on appeal.  *See Teal*, 230 S.W.3d at 182.  We hold that Appellant failed to preserve his objection to the specificity of the information.

### D. Sufficiency of the Evidence of Disability

The term "disabled individual," as used in the aggravated sexual assault statute, "means a person older than 13 years of age who by reason of age or physical or mental disease, defect, or injury is substantially unable to protect the person's self from harm or to provide food, shelter, or medical care for the person's self."  TEX. PENAL CODE ANN. § 22.021(b)(3) (West Supp. 2017).  Appellant contends there was insufficient evidence that M.R. was disabled and that, therefore, the evidence was insufficient to support his conviction.

In a similar case involving aggravated sexual assault of a disabled person, the defendant argued that there was insufficient evidence of the victim's mental disability.  *Denstitt v. State*, No. 02-14-00172-CR, 2015 WL 4043285, at \*2–3 (Tex. App.—Fort Worth July 2, 2015, no pet.) (mem. op., not designated for publication).  In *Denstitt*, the evidence included testimony of a forensic interviewer who interviewed the complainant and thought her cognitive level was that of a child between six and ten years old based on her childlike terminology and her mental processing in answering questions, among other things.  *Id.* at \*1.  The interviewer found the complainant to be dependent upon other people to make important decisions.  *Id.*  The complainant's uncle testified that she was disabled, unable to live independently, and received disability payments from Social Security.  *Id.* at \*2.  The jury observed and listened to the complainant testify at trial.  *Id.*  The Fort Worth Court of Appeals held that there was sufficient evidence from which the jury could have found beyond a reasonable doubt that the complainant was a disabled person. *Id.*

As discussed above, M.R.'s mother testified that M.R. had lived with her all her life and that she had ADHD, Asperger's syndrome, and a diminished intellectual capacity. M.R.'s physician, Dr. Okwuwa, testified that M.R. could not care for herself. The officer who responded to the initial police call testified that talking to M.R. was like speaking to a seven- to ten-year-old child. M.R. was interviewed at the Children's Advocacy Center due to M.R.'s childlike level. The SANE testified that M.R. had the development level of a seven- to eight-year-old child. The jury was able to see and hear M.R. testify. Even though she was twenty-two years old, M.R. needed dolls to testify about the actions of Appellant. Applying the appropriate standard of review, we hold that there was sufficient evidence from which a jury could have found beyond a reasonable doubt that M.R. was a disabled person as contemplated by Section 22.021(b)(3). We overrule Appellant's fourth issue.

## VI. *Conclusion*

Having overruled Appellant's four issues, we affirm the judgment of the trial court.

October 4, 2018                      REBECCA SIMMONS

Do not publish. *See* TEX. R. APP. P. 47.2(b).      FORMER JUSTICE

Panel consists of: Bailey, C.J.,
Simmons, F.J.,[5] and Wright, S.C.J.[6]

Willson, J., not participating.

---

[5]Rebecca Simmons, Former Justice, Court of Appeals, 4th District of Texas at San Antonio, sitting by assignment.

[6]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.