# NO. 12-19-00350-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *ANDRE MONTREL WOODS,*<br>*APPELLANT* | § | *APPEAL FROM THE 159TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *ANGELINA COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Andre Montrel Woods appeals his conviction for murder. In two issues, Appellant urges the trial court abused its discretion in admitting certain evidence regarding Appellant's competency. We affirm.

## BACKGROUND

Appellant was charged by indictment with the murder of Ashleigh Simone Elijah. Appellant pleaded "not guilty," and the matter proceeded to a jury trial. The jury ultimately found Appellant "guilty" as charged and, after hearing evidence and argument on punishment, sentenced Appellant to life in prison.

In a previous appeal, Appellant sought relief based upon the claim that the court's charge at guilt/innocence, and its corresponding jury verdict, were not contained within the clerk's record. When the record was supplemented with those documents a week after the brief was filed and well before appeal was final, we held that the issues were procedurally moot.[1] Appellant filed a petition for discretionary review with the Court of Criminal Appeals, which

---

[1] ***Woods v. State***, No. 12-19-00350-CR, 2020 WL 6380337, at *1-3 (Tex. App.—Tyler Oct. 30, 2020), *petition for discretionary review granted, judgment vacated*, PD-1085-20, 2021 WL 476105 (Tex. Crim. App. Feb. 10, 2021) (op., not designated for publication) (per curiam).

determined Appellant effectively received no meaningful appeal.[2]  The case was later remanded to the trial court for appointment of new counsel.  This appeal followed.

**ADMISSIBILITY OF EVIDENCE**

In two issues, Appellant asserts the trial court erred in admitting certain evidence during the State's cross examination of a witness.  In his first issue, Appellant urges that the State's improper questions injected harmful facts before the jury.  In his second issue, Appellant argues that the State's questions referred to matters that are inadmissible as a matter of law.  In both issues, Appellant contends the evidence is inadmissible under Article 46B.007 of the Texas Code of Criminal Procedure.  The State urges that Appellant "opened the door" to such evidence and that the error, if any, was harmless.

## Standard of Review and Applicable Law

A trial court's ruling admitting evidence will not be reversed on appeal absent a clear abuse of discretion.  *Tillman v. State,* 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *Russeau v. State,* 291 S.W.3d 426, 438 (Tex. Crim. App. 2009); *Ramos v. State,* 245 S.W.3d 410, 417–18 (Tex. Crim. App. 2008); *Lozano v. State,* 359 S.W.3d 790, 817 (Tex. App.—Fort Worth 2012, pet. ref'd).  The trial court does not abuse its discretion by admitting evidence unless its determination lies outside the zone of reasonable disagreement. *Lozano,* 359 S.W.3d at 817.  The trial court's ruling will be upheld if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Ramos,* 245 S.W.3d at 418; *State v. Dixon,* 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

Article 46B.007, entitled "Admissibility of Statements and Certain Other Evidence," provides, in relevant part, as follows:

> A statement made by a defendant during a[ ] [competency] examination [or] the testimony of an expert based on that statement . . . may not be admitted in evidence against the defendant in any criminal proceeding, other than at: (1) a trial on the defendant's incompetency; or (2) any proceeding at which the defendant first introduces into evidence a statement [or] testimony . . . described by this article.

TEX. CODE CRIM. PROC. ANN. art. 46B.007 (West 2018).

---

[2] *Woods*, 2021 WL 476105, at *1.

2

However, evidence that would normally be inadmissible may become admissible if a party "opens the door" to it. *See, e.g., **Williams v. State**,* 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) (assuming evidence inadmissible under Rule 404(b), and holding no abuse of discretion because appellant opened the door), *cert. denied,* 560 U.S. 966, 130 S. Ct. 3411, 177 L. Ed. 2d 326 (2010); **Hayden v. State**, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009) (holding that even though State opened the door, trial court acted within its discretion to exclude rebuttal evidence under Rule 403); **Carroll v. State**, No. 02–11–00265–CR, 2013 WL 2435560, at *3 (Tex. App.—Fort Worth June 6, 2013, no pet.) (mem. op., not designated for publication). When defense counsel pursues a subject or line of questioning that would ordinarily be outside of the realm of proper comment for the State, the defense "opens the door" and creates a right of reply for the State. **Tovar v. State**, 221 S.W.3d 185, 190 (Tex. App.—Houston [1st Dist.] 2006, no pet.). "A party who opens a door to an issue 'cannot complain when the opposing party desires to go into the details of that subject.'" *Id.* (quoting **Sherman v. State**, 20 S.W.3d 96, 101 (Tex. App.—Texarkana 2000, no pet.)).

The erroneous admission of evidence generally constitutes nonconstitutional error. *See* **Motilla v. State**, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We must disregard a nonconstitutional error if it does not affect substantial rights. TEX. R. APP. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." **Schmutz v. State**, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014). "[S]ubstantial rights are not affected by the erroneous admission of evidence 'if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect.'" **Motilla**, 78 S.W.3d at 355 (quoting **Solomon v. State**, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001)). In assessing the likelihood that the jury's decision was adversely affected by the error, we must "consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *Id.*

## Analysis

Prior to trial, Dr. Joseph Kartye examined Appellant to determine his competency to stand trial. Ultimately, Dr. Kartye found Appellant competent. His evaluation contains notes and opinions on Appellant's sanity and attempts to feign insanity. His notes reflect that

Appellant was aware of what he was doing at the time of the shooting and that he acted purposefully and out of anger. He believed that Appellant did not hallucinate and was not delusional at the time of the shooting. Dr. Kartye noted that Appellant had no mental health issues during his incarceration. He further believed Appellant blatantly faked mental illness during his competency evaluation.

At trial, Appellant called Detective Starlan Glawson of the Lufkin Police Department as a witness. During direct examination, Appellant asked Detective Glawson to read conversations regarding Appellant's sanity between Appellant and his family and friends. Glawson testified that Appellant made the following statements:

> I'm fixing to beat this. I just got murder and ag assault, I'm fixing to beat that. I'm going insane. Somebody took over my body.
> . . .
> I might be coming home. I'm going for insanity. I told them to leave me alone.
> . . .
> I'm going to bust these guards [sic] ass if they play with me. I'm going insane. I'm pleading insane.
> . . .
> I'm fixing to start punching these guards. I ain't got no mind. I don't know what happened to it.

To clarify Appellant's mental state, the State cross-examined Detective Glawson as follows:

> Q. Let's talk a little bit about this insanity stuff. Okay. Did you know that Dr. Kartye has examined the Defendant and found that he's not insane? Did you know that?
> A. No, sir.
> Q. Okay. Did you know that Dr. Kartye, a licensed --
> [Appellant]: I'm going to object, Your Honor. He's testifying to the jury. He's not asking a question.
> [State]: I'm asking if he knows, Your Honor.
> Trial Court: All right. This is cross-examination where leading is permitted. Overruled.
> [State]. Did you know that Dr. Kartye, a licensed psychologist, has examined the Defendant and found --
> [Appellant]: And I'll object to the hearsay, Your Honor.
> Trial Court: Overruled as to the specific question.
> [State]: It call for a "yes" or "no". That's all it calls for. Do you know if Dr. Kartye has examined the Defendant for insanity? "Yes" or "no".
> A. I didn't know. No, sir.
> Q. You don't know; is that correct?
> A. I don't know.
> Q. Do you know if he's examined him for any mental health issues?
> A. I don't know.
> Q. All right. Fair enough. Listening to the telephone calls, based on your experience, okay, because you've been cross -- no direct examination. Tell the members of the jury, this talk by the

Defendant about insanity, did you believe that to be real or just some little defense he is trying to concoct?

A. I felt it was just something for him to try to get himself out of jail.

Q. To beat the rap, so to speak, right?

A. Yes, sir.

Q. As a means of avoiding responsibility for shooting Ashleigh Elijah?

A. Yes, sir.

Q. From your roll in this investigation, do you have any particular reason to believe the Defendant suffers from mental health issues?

A. No, sir. I have no reason to believe.

Q. Do you believe that there are evil people in this world?

A. I sure do, yes, sir.

Appellant contends this cross-examination violated Article 46B.007 of the Code of Criminal Procedure and injected harmful facts before the jury. However, even were we to assume this cross-examination was improper, any such alleged error was harmless. A review of the record demonstrates that there was a plethora of evidence demonstrating Appellant's guilt.

Miesha McKnight, Elijah's best friend, testified that Elijah was angered by a text message from Appellant the night before the incident. The same night, McKnight saw Elijah swing a bat at Appellant, but Elijah did not actually strike Appellant. Appellant smirked and laughed about it. McKnight testified that the next day, she, Elijah, and Elijah's boyfriend went to McKnight's mother's house. McKnight's mother, Shirley Ray, was Appellant's neighbor. When they arrived at Ray's house, Appellant was already there. Appellant then ran next door to his mother's house. Elijah also went to Appellant's mother's house, where she subsequently had an argument with Appellant's godmother. McKnight heard the door slam and Elijah leave Appellant's mother's house. Appellant yelled "Bitch, don't slam my mom's door." McKnight heard Elijah and Appellant argue and curse at each other.

McKnight then heard Appellant say, "I'm really fixing to shoot this bitch." She also saw Appellant enter his mother's house, exit with a firearm, and chase Elijah and shoot her in the hip. She also saw Appellant push his mother as she attempted to stop him. Appellant chased Elijah around a car as she begged for her life. McKnight testified that Appellant briefly pointed the gun at her but then pointed it back at Elijah. She heard Appellant say, "Bitch, I got good aim," and "this shit has to end today," and then she saw Appellant shoot Elijah in the head. Appellant then ran into a wooded area.

Ray testified that she heard a gunshot from inside her house. When she went outside, she saw Elijah bleeding from her side. Ray then saw Appellant chase Elijah with a firearm. Ray

went inside to call 911.  When she returned, Elijah had been shot a second time.  Ray stated that Elijah was bleeding from her mouth and nose.  She then saw Appellant run into the woods.

A neighbor's surveillance video was admitted into evidence and played, in part, for the jury.  The video corroborated McKnight's and Ray's respective testimonies.  It showed Appellant with a gun in his hand, showed Appellant at least fifteen feet away from Elijah at the time of the shooting, and showed Appellant fleeing the scene after the shooting.  Lieutenant David Young of the Lufkin Police Department testified that he believed the distance between Appellant and Elijah explained why there was no blood spatter on Appellant.  Sandy Parent, a forensic scientist with the Texas Department of Public Safety Crime Laboratory, testified that lead and antimony, an alloy, were found on Appellant's right hand after the shooting.  She believed this corroborated the use of a .22 caliber weapon.  Dr. Tommy Brown, a forensic pathologist, performed an autopsy and determined that Elijah died of a gunshot wound to the head from a .22 caliber firearm.

Appellant's competency and sanity was not mentioned during the remainder of the evidence portion at trial.  During closing arguments, the State mentioned that Appellant planned to feign insanity while incarcerated, but the State did not mention Dr. Kartye's report.

After reviewing the record, the evidence of Appellant's guilt is overwhelming.  *See Mitten v. State*, 228 S.W.3d 693, 696 (Tex. App.—Corpus Christi 2005, pet. dism'd).  Furthermore, it does not appear the State emphasized the alleged error of admitting Dr. Kartye's statements.  *Id.*  Based on our review of the record, we hold the evidence regarding Appellant's competency had zero or a slight influence on the jury's verdict; therefore, any such alleged error was harmless.  *See Motilla*, 78 S.W.3d at 355.  We overrule Appellant's first and second issues.

## DISPOSITION

Having overruled Appellant's first and second issues, we ***affirm*** the trial court's judgment.

JAMES T. WORTHEN
Chief Justice

Opinion delivered September 15, 2021.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**SEPTEMBER 15, 2021**

**NO. 12-19-00350-CR**

**ANDRE MONTREL WOODS,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 159th District Court

of Angelina County, Texas (Tr.Ct.No. 2018-0521)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*